SMITH vs MOORE.

Opinion delivered January 12, 1900.

1.  *Chattel Mortgage—Construction—Assignment for Benefit of Creditors.*

A failing debtor conveyed by mortgage all of his property, not exempt by law from execution, to four of his creditors.   He owed them about $1,500.00.   The value of the goods conveyed was $1,700.00.   The instrument reserved to the mortgagor any surplus that might remain after paying said indebtedness. *Held,* On its face the instrument constituted a mortgage and not a deed of assignment.

2.  *Chattel Mortgage—Parol Evidence to Prove Intent of Parties.*

When one attacking a mortgage, as being an assignment for benefit of creditors, offers parol evidence to show that the mortgage was in fact intended to operate as an assignment, the other side may introduce parol evidence as to the intent of the parties, in order to sustain the mortgage.

Appeal from the United States court for the Northern District.

WM. M. SPRINGER, Judge.

Suit in attachment by W. L. Moore against W. C. Smith. Ulmer Furniture Company, mortgagee and others interpleaded. The court instructed a verdict sustaining the attachment and entered judgment thereon. Defendant, Smith, appeals. Reversed.

On and prior to December 23, 1895, appellant was engaged in the mercantile business at the town of Oolagah, in the Northern District of the Indian Territory. At that time he was indebted to divers persons in the sum of over $3,500, and owned a stock of goods valued at $1,700. On the date above mentioned he executed four instruments to certain four of his creditors, conveying all of his property, for the purpose of satisfying debts to the amount of about $1,600. These instruments were in the usual form of chattel mortgages, and are as follows. "Chattel Mortgage, with Power of Sale. This indenture, made this 23rd day of December, 1895, between W. C. Smith, party of the first part, and Ulmer Furniture Co., Independence, Kansas, party of the second part, witnesseth that for and in consideration of the sum of thirty-nine and no / 100, dollars the receipt of which is hereby acknowledged, the party of the first part has bargained, sold, granted, conveyed, and by these presents hereby bargains, sells, and conveys, to the party of the second part, their successors and assigns, the following described property, the title to which I guaranty, to-wit: One stock of general merchandise, consisting chiefly of groceries, dry goods, boots, shoes, hats, caps, and gent's furnishing goods, clothing and all other merchandise contained in my store in Oolagah, I. T., together with iron safe, show cases, and all other fixtures contained therein. This conveyance to be subject to three chattel mortgages, of even date, in favor of Henry Baden, W. M. Wade, and Nannie Smith. To have and to hold the same unto the party of the second part, his successors, heirs, and assigns, forever; conditioned, however, as follows: Whereas, the said party of the first part is

indebted to the party of the second part in the sum of thirty-nine dollars, evidenced by his certain promissory note, bearing even date with this instrument, for said sum of money, drawing ten per cent. interest from date, payable to the order of the Ulmer Furniture Co., signed by W. C. Smith, and due as follows:    Now, if the party of the first part shall well and truly pay to the party of the second part the sum hereinbefore mentioned, and all other indebtedness which may then be due to the party of the second part by the party of the first part, together with the cost of this trust, on or before the 23rd day of January, 1896, then this conveyance shall be void; otherwise to remain in full force and effect. And in the case any default shall be made in the payment of said indebtedness as herein set forth, or should the party of the first part, prior to the full payment of above mentioned indebtedness, sell, attempt to sell, ship, remove, or otherwise dispose of the property herein conveyed, or any part thereof, without the consent of the party of the second part, or in case the said party of the second part shall at any time deem themselves insecure, or deem that, in order to properly protect themselves and secure full payment of the above mentioned indebtedness, such action shall be necessary, then, in either event, the party of the second part, his agent or attorney, is hereby authorized and empowered to take charge of said property on demand, without process of law, and sell or dispose of same, or so much as may be necessary, at public sale, without appraisement (the appraisement required by law being hereby expressly waived), at Oolagah, I. T., for cash in hand, upon two weeks' notice in some newspaper published in the Northern district, Indian Territory, or by written notices posted in five conspicuous places near the property, at which sale any of the parties hereto may purchase as other parties; and out of the proceeds of the said sale the said party of the second part to retain the sum due them as herein set forth, and the cost of this trust and

of sale, rendering the overplus, if any, to the said party of
the first part, their successors, executors, or assigns.    It is
hereby agreed that B. W. Keeler shall be the agent of the
party of the second part to take immediate possession of said
property, and to sell the same, and apply the proceeds, after
paying the expenses of such sale, to the satisfaction of the
indebtedness above named.    Given under my hand and seal
the 23d day of December, 1895.    W. C. Smith.  [Seal.]"  All
the mortgages are identical, except the name of the mortg-
agee and the amount.    They were all duly acknowledged
and filed for record.    Immediately after the execution of the
instruments the said B. W. Keeler took possession of the
stock of goods, and continued to sell in the usual course of
trade until December 27, 1895, when an attachment was is-
sued and levied upon the stock of goods mentioned in the
mortgages, at the suit of the appellee herein.    On February
3, 1896, W. M. Wade and Henry Baden, two of the creditors
secured by the mortgages, filed their interplea and bond,
took possession of the property, and proceeded to sell the
same under the terms of the mortgages.    On March 1, 1897,
trial was had, and the jury, by direction of the court, sus-
tained the attachment.    There were other interveners, as
well as attaching creditors, but by agreement all were con-
tinued to await final decision herein, and a judgment was
simply rendered sustaining the attachment as against the
conveyances of Smith, the appellant.    Motion for new trial
was filed and overruled, exceptions saved, and an appeal
regularly taken.

*Davenport & Dugger, W. M. Hall* and *E. S. Bessey*, for
appellant.

A mortgage is intended to secure debts; an assign-
ment for benefit of creditors, to satisfy debts.  If the in-
strument reserves the right of redemption it is a mortgage.

(9)

Marquese vs Felsenthal, 58 Ark. 293; 24 S. W. 493; Fech-heimer vs Robertson, 53 Ark 101; Reynolds vs Johnson, 54 Ark. 449; 62 Wis. 554; 24 Wis. 368; 8 Iowa 103; 71 Iowa 124; 33 N. W. 657; Robson vs Tomlinson, 54 Ark. 229; Rainwater vs Malcolm, 2 C. C. A, 476; Adler vs Phillipe, 37 S. W. 297; Henry vs Crum, 40 S. W. 83; Wood vs Adler, 59 Ark. 270.

*Dooley & Keith,* and *Soper, Mellette & Smith,* for appellee.

Assignments for benefit of creditors are transfers by debtors of some or all of their property to an assignee in trust to apply the same, or the proceeds, to the payment of some or all of their debts. Burrill on Assignments (6th Ed.) § 2; Anderson Law Dictionary, 83. It is not essential that the trustee should be named as such in the instrument. Burrow vs Lehndroff, 8 Iowa 96; Dickson vs Rawson, 5 Ohio St. 118. The controlling guide is; was it the intention of the parties at the time the instrument was executed to divest the debtor of his title, and make an appropriation of the pro-perty to raise a fund to pay his debts. Robson vs Tomlin-son, 15 S. W. 456; Richmond vs Miss. Mills, 11 S. W. 960; Fechheimer vs Robertson, 13 S. W. 423; Box vs Goodbar, 14 S. W. 925; Apollos vs Brady, 49 Fed. 401.

CLAYTON, J. There is but one proposition presented for our consideration by counsel for appellant, to wit: Were the instruments of writing offered in evidence in the nature of a mortgage, or do they constitute an assignment? There appear to have been four purported mortgages executed by appellant on the same day to secure the claims of certain four of his creditors therein named, aggregating the sum of over $1,500. Only three were offered in evidence, but as the record is clear on this point, and it not being disputed, we will consider it as a fact that appellant conveyed all of his property, valued at $1,700, to secure the payment of over

$1,600 indebtedness. If the instruments, which must be considered as one transaction, are mortgages made to secure the payment of bona fide debts, they cannot be considered as fraudulent; and, as they were duly filed for record, the lien created thereby is superior to that of the attachment. "A conveyance or assignment by a debtor of his personal property to a creditor, upon trust, to sell and pay his debt to one or more creditors, with a reservation to himself of any surplus there may be, is, in effect, a mortgage." Jones, Chat. Mortg. 352; Cobbey, Chat. Mortg. § 99; Burrill, Assignm. § 8. The test is, has the debtor absolutely disposed of his property for the purpose of raising a fund to pay his debts, without reserving the equity of redemption? If so, the transaction constitutes an assignment; otherwise a mortgage. It is specially provided in the instruments above set out that, if the debts secured thereby shall be paid within 30 days, then the obligation shall be void. The appointment of Keeler as agent of the creditors named therein, with power to take immediate possession and sell the property, did not render the defeasance clause inoperative. As stated in Hat Co. vs Malcolm, 2 C. C. A. 479, 51 Fed. 737,—a case almost precisely in point. " There is nothing on the face of the deed to warrant the court in declaring this defeasance clause a nullity. * * * Whether the mortgagor entertained an honest hope or expectation of redeeming the property, or whether the defeasance clause was inserted as a mere device to evade the statute on the subject of assignments for the benefit of creditors, was a question of fact for the jury." To constitute an assignment, there must be a trustee, either express or implied, who is responsible to other creditors, and not to the debtor, for the proceeds of the property. Burrill, Assignm. § 3. The test is well stated in the case of Fecheimer vs Robertson, 53 Ark. 105, 13 S. W. 424, in which case the court say: "Can other creditors call the grantee, or person stipulated for by the

grantor, to account for the proceeds of the property? If they can, then the conveyance is not solely for the benefit of the grantees, and conveyances of this kind would constitute an assignment. If the grantees, or the parties to whom by arrangement with the grantors the property is given, are not liable to account to other creditors for the proceeds of sale, then there is no trustee and no assignment." In Robson vs Tomlinson, 54 Ark. 229, 15 S. W. 456, it is held. "In arriving at the intent of the parties, therefore, the question is not whether the debtor intended to avail himself of the equity of redemption by payment of the debt, but, was it the intention to reserve the equity?" The instruments in questions specifically reserve the equity of redemption, and, therefore, on their faces, are bona fide chattel mortgages, and not in the nature of an assignment. Cobbey, Chat. Mortg. § 98. The case of Richmond vs Mississippi Mills, 52 Ark. 30, 11 S. W. 960, is very similar to the one under consideration; but in that case the instrument, as well as orders given by Richmond to the trustee, clearly shows that it was the intention to have all the property sold for the purpose of paying all of the debts of Richmond, whether secured by the mortgage or not,—thus making it an assignment, rather than a mortgage. The case of Hat Co. vs Malcolm, supra, decided by the circuit court of appeals for the Eighth circuit, seems to us to state the law correctly, and fully sustains the views herein expressed.

We hold, therefore, that the instruments of writing offered in evidence in this suit are, on their faces, mortgages, and that they do not constitute an assignment for the benefit of creditors. And, therefore, if they are to be so held, it must be upon the oral testimony introduced in evidence at the trial. The only witnesses called to testify in relation to this matter were the defendant, Smith, and Keeler, the agent named in the mortgages; and they were called by the plaintiff. And, while some facts and circum-

stances were elicited from them which might tend to show that the defeasance clause in the mortgages was not made in good faith, yet, when, on cross-examination, for the very purpose of showing the good faith of the parties, Mr. Smith was asked the question by his counsel, "What was the purpose of giving these mortgages?" he was not allowed to answer, on the ground that the mortgages themselves were the best evidence of his purpose, and exceptions were duly saved. The witness was not allowed to testify at all to the bona fides of the transaction. If he, being a party to the instrument, as well as to the suit, had been called as a witness in his own behalf for the purpose of contradicting the terms of the instrument, and of showing that at the time they were executed he intended something different to that expressed by the plain language of the mortgages, the rule that parol evidence is not admissible to contradict the terms of a written instrument would apply. But third persons, not parties to the instrument, may show by parol evidence that the instrument is different from what on its face it purports to be. The very purpose of the plaintiff in putting the witness on the stand was to show that the instruments were not what on their faces they purported to be. From the very necessity of the case, he was driven to parol evidence to establish these facts. And in such a case, of course, the law permits it. If, then, in this case parol evidence may be used by one of the parties to the suit to vary its terms,— to show that it is not what it purports to be, that it was fraudulent, and that the true intent of the parties is not expressed by it,—is it not equally clear that parol evidence may be used by the other party to support the deed, to show that by its terms the true intent of the parties was expressed, and generally to establish the bona fides of the transaction? Such is clearly the law, and the exclusion of the testimony by the court was error. Let the judgment be reversed, and the case remanded.

TOWNSEND, J., concurs.