### JOHN P. SQUIRE AND COMPANY *vs.* JOSEPH O. TELLIER & others.

Suffolk. December 15, 16, 1903. — January 7, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Constitutional Law,* Police power, reasonable regulation. *Sales of Merchandise in Bulk.*

St. 1903, c. 415, providing that sales of merchandise in bulk, not made in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be void as against creditors of the seller, unless certain requirements for the information and protection of creditors are complied with, is constitutional.

BILL IN EQUITY, filed August 13, and amended October 20, 1903, by John P. Squire and Company, a corporation organized under the laws of New Jersey, to reach and apply, in satisfaction of a debt from the defendants Tellier and Chausse to the plaintiff, a stock of merchandise alleged to have been sold by the defendants Tellier and Chausse to the defendant Hudon without compliance with the provisions of St. 1903, c. 415.

The defendant Hudon demurred to the amended bill on the ground that the statute named is unconstitutional. In the Superior Court *Sheldon,* J. overruled the demurrer, and, at the request of the parties, being of opinion that the question raised so affected the merits of the controversy that before further proceedings the matter ought to be determined by this court, reported the case for such determination. If the demurrer was sustained, the bill was to be dismissed; otherwise the defendant Hudon was to file an answer.

*M. S. Holbrook,* for the plaintiff.

*A. W. Putnam,* (*H. A. Richardson* with him,) for the defendant Hudon.

*A. E. Pillsbury & W. M. Morgan,* for the Boston Credit Men's Association, by leave of court, filed a brief in support of the constitutionality of the statute.

KNOWLTON, C. J. The only question for our consideration on the demurrer to this bill is whether the St. 1903, c. 415, is

constitutional.   The first section of this statute is as follows:
" The sale in bulk of any part or the whole of a stock of mer-
chandise, otherwise than in the ordinary course of trade and in
the regular and usual prosecution of the seller's business, shall
be fraudulent and void as against the creditors of the seller, un-
less the seller and purchaser, at least five days before the sale,
make a full, detailed inventory, showing the quantity and, so far
as possible with exercise of reasonable diligence, the cost price to
the seller of each article to be included in the sale ; and unless
the purchaser demands and receives from the seller a written
list of names and addresses of creditors of the seller, with the
amount of indebtedness due or owing to each and certified by
the seller, under oath, to be, to the best of his knowledge and
belief, a full, accurate and complete list of his creditors and of
his indebtedness ; and unless the purchaser shall, at least five
days before taking possession of such merchandise, or paying
therefor, notify personally, or by registered mail, every creditor
whose name and address are stated in said list, of the proposed
sale and of the price, terms and conditions thereof."   The
second section exempts from the provisions of the act, sales by
executors, administrators, receivers, assignees for the benefit of
creditors, trustees in bankruptcy and public officers acting under
judicial process.   This is a pretty stringent regulation of a cer-
tain class of sales.   The purpose of the Legislature evidently
was to provide for creditors protection against a class of sales
which are frequently fraudulent, and which leave creditors with
no means of collecting that which they ought to receive.   The
statute deals only with sales in bulk of a part or the whole of a
stock of merchandise, which are not made in the ordinary course
of trade and in the regular and usual prosecution of the seller's
business.   It does not interfere with the transaction of ordinary
business, but relates to unusual and extraordinary transfers.   In
substance, it declares that a sale of this kind shall not be made
without first giving to creditors an opportunity to collect their
debts, so far as the property to be sold might enable them to
collect, or subsequently making satisfactory provision for the
payment of these debts.   A sale made in violation of the statute
is void only as against creditors, and, if the vendor's debts are
paid, the sale cannot be interfered with.   A purchaser, to be

safe, has only to see that the vendor's creditors are provided for. The vendor may sell freely, without regard to the statute, if he pays his debts. The Legislature, when contemplating this legislation, had occasion to consider and balance against each other the general right of property owners to make contracts and dispose of their property, and the general right of creditors to be paid, and to have reasonable opportunities secured to them for the collection of their debts. That this is within a class of legislation for which there is constitutional authority is too plain for question. The object of it is like that of our numerous statutory provisions which authorize attachments on mesne process, and establish courts with all the necessary machinery for the collection of debts. The statute requires of the vendor nothing that cannot be done with reasonable effort. If he is unable or unwilling to pay his debts, it puts a substantial obstacle in his way when he wants to dispose of his stock of merchandise in bulk and to receive payment for himself. But, under such circumstances, the property in most cases ought not to be sold in bulk without first giving creditors an opportunity to consider what ought to be done with it.

The Legislature undoubtedly assumed to act under what is termed broadly the police power, and more specifically to act under the authority directly conferred by c. 1, § 1, art. 4 of the Constitution of Massachusetts, which permits them "to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances . . . as they shall judge to be for the good and welfare of this commonwealth," etc. Their power to regulate and limit the making of contracts and the use and disposition of property is very broad. This is illustrated by the statutes found in Titles XII. and XIII. of our Revised Laws, comprising chapters from fifty-six to seventy-four, inclusive. This power is recognized in many decisions of the courts. *Commonwealth* v. *Blackington*, 24 Pick. 352. *Blair* v. *Forehand*, 100 Mass. 136, 139. *Watertown* v. *Mayo*, 109 Mass. 315. *Commonwealth* v. *Crowell*, 156 Mass. 215. *Commonwealth* v. *Huntley*, 156 Mass. 236. *Commonwealth* v. *Gilbert*, 160 Mass. 157, 160. *Opinion of the Justices*, 163 Mass. 589. *Newton* v. *Joyce*, 166 Mass. 83. *Commonwealth* v. *Nutting*, 175 Mass. 154. *Slaughter-House cases*, 16 Wall. 36. *Butchers' Union Co.* v. *Cres-*

cent City Co. 111 U. S. 746.   Frisbie v. United States, 157 U. S.
160, 165.   Plumley v. Massachusetts, 155 U. S. 461.   Nutting v.
Massachusetts, 183 U. S. 553.

Although the requirements of the act are very strict, we can-
not say that the determination of the Legislature, as between
the interests of owners of stocks of merchandise and their
creditors, was so far wrong as to render the statute unconstitu-
tional.   Within certain limitations, it is for the Legislature to
judge of the policy and expediency of a law, if, in other respects,
they have power to enact it.   Bancroft v. Cambridge, 126 Mass.
438, 441.   Sawyer v. Davis, 136 Mass. 239, 241.   Opinion of the
Justices, 163 Mass. 589, 595.   Commonwealth v. Pear, 183 Mass.
242, 248.   Lawton v. Steele, 152 U. S. 133.

The statute is not objectionable as applying only to a particu-
lar class.   It applies to all who come within the reasons for its
enactment.   Commonwealth v. Danziger, 176 Mass. 290 and cases
cited.   Rideout v. Knox, 148 Mass. 368.

Similar statutes having the same object but varying consider-
ably in their provisions, have been enacted recently in many
other States.   In Tennessee and in Washington the highest
court of the State has decided that the statute there enacted is
constitutional.   Neas v. Borches, 109 Tenn. 398.   McDaniels v.
J. J. Connelly Shoe Co. 30 Wash. 549.   The statute in Wash-
ington is very similar to that now before us.   See also Hart v.
Roney, 93 Md. 432, and Fisher v. Herrman, 118 Wis. 424, in
which the courts of Maryland and Wisconsin seem to assume the
constitutionality of their local statutes on this subject, which are
somewhat less restrictive than that of Massachusetts.

                                        *Demurrer overruled.*