MOORE DRY GOODS COMPANY v. JAMES H. ROWE ET AL.

## [53 South. 626.]

FRAUDULENT CONVEYANCES. *Sales of merchandise in bulk. Laws* 1908, *ch.* 100. *Evidence. Constitutional law. Fourteenth amendment. Due process of law. Equal protection of law.*

   The Statute, Laws 1908, ch. 100, regulating sales of stocks of merchandise in bulk, and declaring such a sale fraudulent as against creditors of the seller unless made in compliance with specified conditions:—

   (*a*) Declares a rule of substantive law, and evidence of good faith and payment of value is inadmissible to take a sale without the statute; and

   (*b*) Is not violative of the fourteenth amendment to the Constitution of the United States, nor any provision of the state constitution of 1890.

FROM the circuit court of, first district, Tallahatchie county.

HON. SAMUEL C. COOK, Judge.

The dry goods company, appellant, was plaintiff in the court below; Rowe and another, were defendants there, and one Jones claimed the property seized under the attachment writ sued out by the plaintiff against the defendants. From a judgment against the plaintiff in favor of the claimant, the plaintiff appealed to the supreme court.

The facts as stated by ANDERSON, J., were as follows:

Moore Dry Goods Company, the appellant, sued out an attachment against the appellees Rowe & Carithers, and had the same levied upon a stock of goods, as the property of said appellees, found in the possession of the appellee J. W. Jones, who claimed title thereto by purchase from the other appellees, Rowe & Carithers. The claimant's issue was made up between the attaching creditor and the claimant, and, a jury being waived, was tried by the court, and judgment rendered in favor of the claimant, from which judgment this appeal is prosecuted. The case was tried on an agreed state of facts, introduced on behalf of the appellee Jones, the claimant, and the testimony of witnesses on behalf of appellant. However, under the view taken by this court, it is only necessary to set out the agreed facts, which alone are material, which are as follows:

"It is agreed by and between the plaintiffs, Moore Dry Goods Co., by their attorneys, Dinkins & Caldwell, and the claimant, J. W. Jones, by Broome & Woods, his attorneys, that the defendant J. H. Rowe, and the claimant, J. W. Jones, if present in court, would testify: That J. H. Rowe owned and was in possession of a stock of goods and merchandise in the town of Charleston, which he had formerly owned as partner with the defendant T. E. Carithers, and that while the partnership existed the debt to the plaintiffs, Moore Dry Goods Co., was contracted in the firm name, and that he later purchased the in-

terest of the defendant T. E. Carithers in said stock of goods, and was conducting the business in his own name prior to the time the attachments herein were sued out and levied. That just before said attachments were sued out and levied he (Rowe) was indebted to wholesale merchants and others to the extent, approximately, of $1,500, but that the amount of indebtedness was not made known to Jones, and that he proposed to H. E. Tansil to sell to him the stock of goods, stating to him at the time he desired to sell them for the purpose of paying his debts. That he made no inventory of the stock, but that he and Mr. Tansil checked it over, and estimated its value at about $800. That later he proposed to sell the goods to J. W. Jones, the claimant, explaining to him that he desired to sell the goods to pay his debts. That he checked over the stock with Jones, and estimated its value at $800. That said goods were sold to claimant in bulk or gross, and delivered to him, and that J. H. Rowe, the seller, did not, five days before, nor at any time, make a full and detailed inventory showing the quantity and cost price to him of each article sold, and that the purchaser, J. W. Jones, made no demand of the said Rowe for the name, place of residence, or post office address of his creditors, or ask to be advised of the sum due each, and that no notice of the purpose of the said J. H. Rowe to sell, nor of the purpose of the said J. W. Jones to purchase, said stock of goods, was given by mail, or otherwise, to each or to any of the seller's creditors, and that no effort was made by the purchaser to ascertain the name, amounts due, and places of address of the creditors of said J. H. Rowe, and that the said J. H. Rowe sold and delivered the said stock of goods to Jones, the claimant, at and for the sum of $600, which was paid to him by check of H. E. Tansil & Co., payable to J. W. Jones, drawn on the Citizens' Bank of Charleston, Miss., and that the same was promptly presented for payment, and that the amount thereof, to wit, $600, was credited

by the said Citizens' Bank upon a note then held by it against the said J. H. Rowe.    It is further agreed that this agreement may be read in evidence on the trial of this cause by either the plaintiff or the claimant without objection or exception save for incompetency or irrelevancy, and that the same shall have effect as though the said witnesses were present in court and testified to the facts contained therein."

*Caldwell & Dinkins* and *Tim. E. Cooper*, for appellant.

Statutes of like nature have been passed in many of the states. In some of them a sale of merchandise in bulk not in conformity with the provisions of the statutes is made exclusive evidence of a fraudulent purpose.    Some of the states provide only that it shall be *prima facie* evidence or fraud.

In California, Act of March 10, 1903; Connecticut, Act of May 6, 1903; District of Columbia, Act of Congress, April 28, 1907; Georgia, Act of August 17, 1903; Idaho, Act of February 12, 1903; Kentucky, Acts of 1904, p. 72; Maine, Act of March 21, 1905; Maryland, Act of April 3, 1906; Massachusetts, Act of June 8, 1903; Michigan, Act of September 16, 1905; Ohio, Act of April 4, 1902; Oregon, Act of May 29, 1899 and May 25, 1901; Pennsylvania, Act of March 28, 1905; Utah, Act of May 8, 1905; Washington, Act of March 16, 1901; New Jersey, Act of June 11, 1907; such sales are either declared to be fraudulent or that the purchasers shall hold the goods subject to the claims of creditors, and in Louisiana, such sales are made a misdemeanor.    Louisiana Acts of 1896, p. 137.

In Colorado, Act of May 26, 1903; Delaware, Act of March 24, 1903; Illinois, Act of May 13, 1905; Minnesota, Act of April 18, 1899; New York, Act of July 24, 1907; Oklahoma, Act of March 16, 1903; South Carolina, Act of February 5, 1906; Tennessee, Act of April 11, 1901; Virginia, Act of January 2, 1904; Wisconsin, Act of May 15, 1901; Florida, Act of

May 27, 1907; North Carolina, Act. of March 5, 1907; North Dakota, Act of March 8, 1907; Maryland, Act of April 8, 1908, such sales without conformity with the statute are declared to be *prima facie* fraudulent and void as to creditors.

In some of the states, especially those in which the Acts declare that sales in bulk without proceeding in the manner pointed out shall be absolutely void, the acts have been held unconstitutional, but the weight of authority is great in favor of the competency of the legislature to pass these laws.

The supreme court of the United States in the case of *Lemieux v. Young,* decided, January 4, 1909, upheld the constitutionality of the Connecticut statute which declared such sales absolutely void as to existing creditors.

Where creditors attack conveyances as having been fraudulently made, the first and most important inquiry is the purpose of the seller in making the attacked sale. If that purpose is found to have been a lawful one, no matter what may have influenced the buyer, the sale is lawful. If, however, the purpose of the seller is found to have been a fraudulent one, it becomes then important to discover whether that fraudulent purpose of the seller was participated in by the purchaser, or whether the purchaser himself was acting in good faith without notice of the fraudulent purpose of the seller. The defense, however, by the purchaser is an affirmative defense and his own good faith must be established by him to save him from the guilt of the seller.

The statute is a general one of which the world must take notice; and it is to be observed that the presumption of fraud attached if either the seller fails to do certain things, or if the purchaser fails to do certain things. The seller must make an inventory as prescribed by subsection *a* of section 1. The purchaser must demand in good faith of the seller the disclosure of the same, place of residence and business and postoffice address of each of the creditors of the seller and of the amount due each,

and to which demand the seller shall have made full and truthful written answers.

The court will observe that the statute puts upon the purchaser the risk that the answers which the seller makes to his inquiries, shall be full and truthful answers.

It is useless, in the face of the statute, to consider the question whether the purchaser may be a purchaser in good faith of a stock of merchandise sold in gross, where the terms of the statute have not been complied with. Manifestly, the purpose of the statute was to put upon the purchaser the burden of showing the good faith of the seller and unless he can show the good faith of the seller, there is no room for the consideration of the question of his own *bona fides.*

*Broome & Woods,* for appellee, Jones.

The question of the constitutionality of Chapter 100, Laws 1908, is not necessary to a decision of this case. The effect of the act is exactly what its language clearly imports. It merely raises or creates a *prima facie* case of fraud in all cases where sales are made in bulk, unless the provisions of the act are complied with, which *prima facie* case is subject to rebuttal evidence. In other words it shifts or changes the rule of evidence in such cases by casting upon the purchaser the burden of overcoming the statutory presumption by showing his *bona fides.* Similar statutes have been held unconstitutional in the following cases: *Wright v. Hart,* 182 N. Y. 330; *Black v. Swartz,* 27 Utah, 387, 101 Am. St. Rep. 971; *Pogue v. Rowe,* 86 N. E. 207; *Miller v. Crawford,* 70 Ohio St. 207, 71 N. E. 631; *McKinster v. Sager,* 163 Ind. 671, 72 N. E. 854; *State v. Julow,* 129 Mo. 163, 50 Am. St. Rep. 443; *Young v. Commonwealth,* 101 Va. 853, 45 S. E. 327. However, our statute does not make this presumption conclusive.

At first blush the case of *Neas v. Borches,* 109 Tenn. 389, 97

Am. St. Rep. 851, would seem to hold sales in bulk absolutely void, notwithstanding the fact that the language of the Tennesee law is "Shall be presumed fraudulent." The sole question involved in that case was the constitutionality of the Tennessee act, and by upholding that act the sale made to Borches was void under the laws of Tennessee 1895, p. 285, which was a law to prevent preferences among creditors. (The provisions of the Laws of Tennessee, 1895, p. 285, are set out in 73 Miss. at pages 763 and 764.) By the failure of the opinion in the *Neas-Borches case* to refer to the Act of 1895, counsel for appellant were led into the natural error of thinking that the supreme court of Tennessee had held that the statutory presumption of fraud was conclusive and not subject to being overcome.

The statutes of the state of Georgia, Connecticut, Michigan, Utah, Massachusetts and Washington contain the words "shall be conclusively presumed to be fraudulent," or words of similar import.

The statutory presumption of fraud may be overthrown by evidence of good faith. *Williams v. Fourth National Bank*, 15 Okla. 477, 2 L. R. A. (N. S.) 334; *Thorpe v. Dennock Met. Co.*, 99 Minn. 22, 108 N. W. 940; *Sprintz v. Saxlon*, 126 App. Div. 421, 110 N. Y. Supp. 585; *Fisher v. Herrman*, 118 Wis. 424; 95 N. W. 392; *Hart v. Raney*, 93 Md. 432, 49 Atl. 661.

ANDERSON, J., after stating the facts as above, delivered the opinion of the court.

This case involves the constitutionality and construction of the "bulk sales law," being chapter 100, p. 90, acts of the legislature of 1908, which is as follows:

"An act for the prevention of frauds in the sale of stocks of merchandise in bulk, and to provide for the transfer of insurance policies upon stocks of merchandise.

"Section 1. *To Prevent Fraudulent Sales of Merchandise—*

*What Presumed to be Fraud.* Be it enacted by the legislature of the state of Mississippi, that a sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business, and a sale of an entire stock of merchandise in gross, shall be presumed to be fraudulent and void as against the creditors of the seller, unless, at least five (5) days before the sale:

"(a) The seller shall have made a full and detailed inventory, showing the quantity, and, so far as can be done by the exercise of reasonable diligence, the cost price to him of each article sold; and

"(b) The purchaser shall have in good faith made full and explicit demand of the seller for the name, place of residence and business and post office address of each of his creditors, and the sum due each, and to which demand the seller shall have made full and truthful written answers; and

"(c) The purchaser shall have in good faith notified personally or by mail each of the seller's creditors, of whom he has knowledge, or with the exercise of reasonable diligence could have acquired knowledge, of the proposed sale and of the cost price of the merchandise proposed to be sold and of the price to be paid therefor by the proposed purchaser.

"Sec. 2. *In Case of Loss by Fire, Creditor to be Notified.* That in case of the destruction of a stock of merchandise by fire upon which there is insurance against such loss, the holder of such insurance policies shall within five days after such loss notify his creditors to whom he is indebted for merchandise, of his loss and the amount of insurance carried, and no such policy or policies of insurance shall be transferred or assigned for ten days after such notice, nor shall any such insurance be paid for fifteen days next after the occurrence of any such fire.

"Sec. 3. *Act Not Applicable to Official Sales under Orders of Court.* That nothing in this act shall apply to official sales

by sheriffs, constables, executors, administrators, guardians, receivers, commissioners, trustees in bankruptcy, or any public officer.

"Sec. 4.  *Rules of Evidence Not Changed by This Law.* That, except as especially provided in this act, nothing herein contained nor any act hereunder, shall change or affect the present rules of evidence or the present presumption of law."

The statute in question is not repugnant to the due process nor the equal protection clauses of the fourteenth amendment of the Constitution of the United States.  *Lemieux v. Young,* 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295; *Kidd, Dater & Price Co. v. Musselman Grocery Co.,* 217 U. S. 461, 30 Sup. Ct. 606; *Squire & Co. v. Tellier,* 185 Mass. 18, 69 N. E. 312, 102 Am. St. Rep. 322; *Walp v. Mooar,* 76 Conn. 515, 57 Atl. 277; *Neas v. Borches,* 109 Tenn. 398, 71 S. W. 50, 97 Am. St. Rep. 851; *McDaniels v. J. J. Connelly Shoe Co.,* 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889—all involving statutes fundamentally like this, so far as affected by these clauses of the Constitution.  Nor is it violative of any provision of the Constitution of this state.

It is contended for appellees that the clause in section 1 of the act, "shall be presumed to be fraudulent and void as against the creditors of the seller, unless, at least," etc., declares a rule of evidence, and not a substantive rule of law; that the presumption is not conclusive, and may therefore be rebutted; that noncompliance with the statute renders the sale only *prima facie* fraudulent and void, which may be overcome by evidence of good faith; and the court below so held.  On the other hand, it is contended that, where the statute is not complied with, the sale is stamped as absolutely fraudulent and void; that it therefore declares a substantive rule of law, and not a rule of evidence. As to the purpose of the statute, we quote with approval the language of Vann, J., in a dissenting opinion, in passing on the

"bulk sales" act of New York in *Wright v. Hart,* 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. (N. S.) 338, approved by the supreme court of the United States in *Lemieux v. Young, supra.* He said: "The object of the act was to suppress a widespread evil, well known to current history, and condemned by repeated adjudication in this court and in all the leading courts of the state from time out of mind. That evil is the tendency and practice of merchants who are heavily in debt to make secret sales of their merchandise in bulk for the purpose of defrauding creditors. Common observation shows that, when a dealer has reached a point in his business career where he cannot go on owing to the claims of creditors, the temptation is strong and the practice common of making a fraudulent sale. Fraud works in secret, and the bargain is closed and the purchaser in possession before the creditors know anything of it. The evil is difficult for the courts to handle, because the evidence to uncover the furtive scheme must, as a rule, be drawn from hostile witnesses, usually relatives or intimate friends of the seller, who took part in the fraud and shared in the plunder."

The statute will have small effect, and fall far short of its purpose, if a noncompliance with its provisions may be obviated by evidence that the sale was made in good faith and for value, it merely shifts the burden of proof; for, under the law as it stood before, there was no great difficulty as a rule in making out a *prima facie* case of fraud. In construing a statute, the evil sought to be remedied must be kept in view; and, if not violative of its plain provisions, it must be made to accomplish, the purpose intended. Section 4 of the statute providing, "that, except as specially provided in this act, nothing herein contained nor any act hereunder, shall change or affect the present rules of evidence or the present presumptions of law," does not mean that such rules and presumptions are intended to be affected; for as held in *Railroad Co. v. Bent,* 94 Miss. 681, 47 South.

805, 22 L. R. A. (N. S.) 821, where the statute declares a substantive rule of law, the legislature cannot change it by labeling it a rule of evidence. The statute fixes as fraudulent and void, so far as the rights of creditors are concerned, all sales made in violation of it, and evidence of good faith and payment of value will not be heard. It was so held by the supreme court of Tennessee in *Neas v. Borches, supra,* in passing on the "bulk sales" act of that state, which contained the identical language of section 1 of this statute.

*Reversed and remanded.*