## NOBLE v. FT. SMITH WHOLESALE GROCERY CO.

No. 1128.    Opinion Filed September 26, 1911.

Rehearing Denied October 8, 1912.

(127 Pac. 14.)

1. **CONSTITUTIONAL LAW**—Fraudulent Conveyances—Due Process of Law—Equal Protection of the Laws—Bulk Sales Law. The act of May 26, 1908 (Sess. Laws 1907-08, p. 55 [Comp. Laws 1909, sec. 7908]), commonly known as the "Bulk Sales Law," which declares that a sale in bulk shall be presumed to be fraudulent and void as against creditors of the seller unless certain specific conditions have been complied with, is not in contravention of, nor repugnant to, the due process clause, nor the equal protection clause, of the fourteenth amendment of the federal Constitution.

2. **FRAUDULENT CONVEYANCES**—Bulk Sales Law—Constitutional Law. Neither is said act violative of any of the provisions of the state Constitution.

3. **SAME**—Police Power. The subject to which the said act relates is clearly within the police powers of the state.

4. **SAME**—Chattel Mortgage. A chattel mortgage, covering a stock of merchandise, where the mortgagor remains in possession, and has the usual right of redemption, creates a lien only, and does not pass title, and is not a sale, exchange, or assignment within the meaning of said act, and is therefore not within the inhibition of said statute.

5. **CHATTEL MORTGAGES**—"Transfer"—Distinction. A "transfer" is the act by which the owner of a thing delivers it to another with the intent of passing the rights which he has in it to the latter, and a chattel mortgage is not within the meaning of such term.

6. **SALES**—What Constitutes. A "sale" is an agreement by which one of two contracting parties, called the seller, gives a thing and passes title to it in exchange for a certain price, and a chattel mortgage is not within the definition.

7. **ASSIGNMENTS**—What Constitutes. An "assignment" is a transfer or setting over of property, or of some right or interest therein, from one person to another; the term denoting not only the act of transfer, but also the instrument effecting it.

(Syllabus by Robertson, C.)

*Error from Le Flore County Court;*
*James F. Hall, Judge.*

Action by the Ft. Smith Wholesale Grocery Company against George W. Noble. Judgment for plaintiff, and defendant brings error. Affirmed.

The Ft. Smith Wholesale Grocery Company filed its petition on June 17, 1909, in the county court of Le Flore county, against George W. Noble, and alleged, in substance, that on December 30, 1908, one W. B. Thomas, a merchant, was indebted to plaintiff in the sum of $430 for goods, wares, and merchandise, to secure the payment of which a chattel mortgage was executed, and which covered his stock of merchandise, located in said county; that on February 5, 1909, the defendant, who was sheriff of Le Flore county, acting under and by virtue of the authority of a writ of attachment issued out of the county court of Le Flore county, in a suit by the McAlester Grocery Company against said W. B. Thomas, levied upon and took possession of and sold the said stock so covered by the chattel mortgage, without paying the debt which said chattel mortgage secured. At the time of the levy of the attachment process, default had been made in the payment of the debt secured by the mortgage, but the mortgagor remained in possession, and there was due to the mortgagee the sum of $350, with interest, for which judgment was prayed. A copy of the mortgage was set up as an exhibit to the petition, and is in the usual form, and provides that the mortgagor shall retain possession of the stock, and that he may sell the same or any portion thereof for cash, and to keep an account of sales, and make a statement of the sales to the mortgagee at stated intervals. The said mortgage was duly executed and filed for record with the register of deeds of said county prior to the levy of the attachment. The defendant answered and admitted all the allegations of the petition, except the legality of the mortgage, claiming that the execution of the mortgage by the debtor was a violation of the "Sale of Merchandise in Bulk Act" (Sess. Laws 1907-08, p. 557 [Comp. Laws 1909, sec. 7908], and that by reason thereof the mortgage was void and of no effect, as against the attaching creditor, the McAlester Grocery Company. The case was tried to the court without a jury upon an agreed statement of fact, and a judgment was rendered by the court in favor

of plaintiff for the amount due under the mortgage, and holding the mortgage valid.

*Jean P. Day, T. H. Du Bois,* and *E. L. Taylor,* for plaintiff in error.

*T. T. Varner,* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as above). There are but two questions raised by the record in this case, viz.:

First. Is the act of May 26, 1908 (Sess. Laws 1907-08, p. 557, [Comp. Laws 1909, p. 1594]), constitutional?

Second. Is the mortgage of W. B. Thomas to the Ft. Smith Wholesale Grocery Company such a transfer of a stock of goods, wares, and merchandise as to require a compliance with the terms of such act to render it valid as against the creditors of the mortgagor?

That the act in question is valid and the proper exercise of legislative power and authority there seems to be no doubt. In discussing this identical subject the author of the note in 2 L. R. A. (N. S.) 331, says:

"Statutes regulating the sales and purchase of goods in bulk are of very recent origin. The earliest was that of Louisiana in 1896, but, like mushrooms, they have sprung up in twenty-two states and territories, and already the courts of twelve have passed upon them. The provisions of all have but one aim—to prevent the sale of goods in bulk until the creditors of the seller have been paid in full. * * * The provisions vary somewhat, but there is a very close similarity in the wording of most of them, and a central idea may be traced to all."

Section 1, Sess. Laws 1907-08, p. 557 (Comp. Laws 1909, sec. 7908), reads as follows:

"Section 1. The transfer of any portion of a stock of goods, wares or merchandise otherwise than in the ordinary course of trade, in the regular and usual prosecution of the transferrer's business, or the transfer of an entire such stock in bulk shall be presumed to be fraudulent and void as against the creditors of such transferrer, and such presumption may be rebutted only by the proposed transferee showing that, at least ten days before the transfer in good faith, he made a sufficient and explicit in-

quiry of the transferrer as to the name and addresses of each and all of his creditors, and that he demanded and received from such transferrer at least ten days before such transfer, a list of the names and addresses of all of the creditors of such transferrer, showing the amount owing each, which statement must be sworn to by such transferrer and shall include a declaration that it is a correct list of all of his creditors with the post-office addresses and the amount owing each; and that at least ten days before such transfer, he notified or caused to be notified of such proposed transfer, personally or by registered mail, each of the creditors of the transferrer of whom such transferee had knowledge or could, with the exercise of reasonable diligence, acquire knowledge; and that such purchase was made by him in good faith for a fair consideration actually paid."

And section 3 of the same act (Sess. Laws 1907-08, p. 558 [Comp. Laws 1909, sec. 7910]) is as follows:

"Transfers under this act shall include sales, exchanges and assignments, but nothing contained in the act shall apply to transfers made by executors, administrators, receivers, assignors under a voluntary assignment for the benefit of creditors, trustees in bankruptcy, or to sales under judicial process."

The Supreme Court of the state of Connecticut, in construing the provisions of Pub. Acts, 1903, c. 72, p. 49, which is very similar to the Oklahoma statute, said:

"The act under consideration is not unconstitutional, either as applying only to a particular class, namely, retail dealers, or as depriving such persons of their property without due process of law. A law which is uniform in its operation is not rendered invalid merely because of the limited number of persons who will be affected by it. The act in question applies equally to all the people of the state who may engage in the business described. The limitation of the act to retail dealers is not an arbitrary classification." (*Walp v. Mooar*, 76 Conn. 515, 57 Atl. 277.)

In *John P. Squire & Co. v. Tellier*, 185 Mass. 18, 69 N. E. 312, 102 Am. St. Rep. 322, the court sustained it under the police power and also under chapter 1, sec. 1, art. 4 of the state Constitution, which permits the Legislature "to make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes, and ordinances * * * as they shall judge to be for the good and welfare of this commonwealth."

Although the requirements of the act are very strict, we cannot say that the determination of the Legislature as between the interests of owners of stocks of merchandise and their creditors was so far wrong as to render the statute unconstitutional. Within certain limitations it is for the Legislature to judge of the policy and expediency of a law, if in other respects they have power to enact it.

In *Neas v. Borches,* 109 Tenn. 398, 71 S. W. 50, 97 Am. St. Rep. 851, the court said in construing a similar statute:

"That it is merely a regulation of the business of merchandising; that it is not class legislation, and that the limitation of the act to merchants is not an arbitrary classification; that it does not take away the property of the citizen, but only regulates the sales of merchandise in such a manner as to prevent fraud."

In *McDaniels v. Connelly Shoe Co.,* 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889, the court said:

"The act, it is true, does prohibit owners of certain kinds of property from disposing of it in a particular way without complying with certain conditions, but it is not for that reason necessarily unconstitutional."

In *William R. Moore Dry Goods Co. v. Rowe & Carithers et al.,* 97 Miss. 775, 53 South. 626, a case decided December 5, 1910, it was held by the court in construing a statute with similar provisions that "the statute in question was not repugnant to the due process nor the equal protection clauses of the fourteenth amendment of the Constitution of the United States." And the court cited with approval *Lemieux v. Young,* 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295; *Kidd, Dater & Price Co. v. Musselman Groc. Co.,* 217 U. S. 461, 30 Sup. Ct. 606, 54 L. Ed. 839; *Squire & Co. v. Tellier,* 185 Mass. 18, 69 N. E. 312, 102 Am. St. Rep. 322; *Walp v. Mooar,* 76 Conn. 515, 57 Atl. 277; *Neas v. Borches,* 109 Tenn. 398, 71 S. W. 50, 97 Am. St. Rep. 851; *McDaniels v. Connelly Shoe Co.,* 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889—all involving statutes fundamentally like this so far as affected by these clauses of the Constitution.

In *Kidd, Dater & Price Co. v. Musselman Grocery Co., supra,* the Supreme Court of the United States, speaking through Mr. Justice White, in construing a Michigan statute, which to all

intents and purposes is like the one now under consideration, said:

"The errors assigned embody the proposition that the Sales in Bulk Act in question was not a valid exercise of the police powers of the state, and is hence repugnant to the fourteenth amendment, because wanting in due process of law, and denying the equal protection of the laws. Substantially the same arguments are urged as are presented in *Lemieux v. Young,* 211 U. S. 489 [29 Sup. Ct. 174, 53 L. Ed. 295]. In the Lemieux case the validity of legislation of the general character of that embodied in the Michigan statute was passed on. A Connecticut law, the constitutionality of which was particularly involved, was held to be a valid exercise of the police power of the state, and not to be repugnant to the due process or equal protection clauses of the fourteenth amendment, although it avoided as against creditors sales by retail dealers in commodities of their entire stock at a single transaction, and not in the regular course of business, unless notice of intention to make such sale was recorded seven days before the consummation. * * * As the subject to which the act relates was clearly within the police powers of the state, the statute cannot be held to be repugnant to the due process clause of the fourteenth amendment, because of the nature or character of the regulations which the statute embodies, unless it clearly appears that those regulations are so beyond all reasonable relation to the subject to which they are applied as to amount to a mere arbitrary usurpation of power. *Booth v. Ill.,* 184 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623. This, we think, is clearly not the case. So, also, as the statute makes a classification based upon a reasonable distinction, and one which, as we have seen, has been generally applied in the exertion of the police power on the subject, there is no foundation for the proposition that the result of the enforcement of the statute would be to deny the equal protection of the laws. These principles are decisive against the contentions made in this case, as we do not find in the provisions of the Michigan statute, when compared with the Connecticut statute, such differences as would warrant us in holding that the regulations of the Michigan statute are so widely beyond all reasonable regulations to the subject to which they are applied, as to amount to mere arbitrary usurpation of power. The purpose of both statutes is the same, viz., to prevent the defrauding of creditors by the secret sale of substantially all of a merchant's stock of goods in bulk, and both require notice of such sale, and make void, as to creditors, the sale without notice."

The same learned judge in delivering the opinion in *Lemieux v. Young, supra,* quoted with approval the language of the Supreme Court of Errors of the state of Connecticut which sustained the bulk sales law of the state, and which quotation is as follows:

" 'It does not seem to us either from a consideration of the requirements themselves of the act, or the facts of the case before us, that the restrictions passed by the Legislature upon sales of the kind in question are such as will cause such serious inconvenience to those affected by them as will amount to any unconstitutional deprivation of property. A retail dealer who owes no debts may lawfully sell his entire stock without giving the required notice. One who is indebted may make a valid sale without such notice by paying his debts, even after the sale is made. Insolvent and fraudulent vendors are those who will be chiefly affected by the act, and it is for the protection of the creditors against sales by them of their entire stock at a single transaction, and not in the regular course of business that its provisions are aimed. It is, of course, possible that an honest and solvent retail dealer might, in consequence of the required notice, before the sale, lose an opportunity of selling his business, or suffer some loss from the delay of the sale occasioned by the giving of such notice. But "a possible application to extreme cases" is not the test of the reasonableness of public rules and regulations. The essential quality of the police power as a governmental agency is that it imposes upon persons and property burdens designed to promote the safety and welfare of the general public.'

"That the court below was right in holding that the subject with which the statute dealt was within the lawful scope of the police authority of the state, we think, is too clear to require discussion. As pointed out by Vann, J., in a dissenting opinion delivered by him in *Wright v. Hart,* 182 N. Y. 350, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263, the subject has been with great unanimity considered to be within the police power, but, as requiring the exertion of such power, he said: 'Twenty states as well as the federal government in the District of Columbia, have similar statutes, some with provisions more stringent than our own, and all aimed at the suppression of an evil that is shown to be almost universal. California, Civil Code, p. 3440, as amended March 10, 1903 (Stat. 1903, c. 100, p. 111) ; Colorado, Session Laws 1903, c. 110, p. 225 ; Connecticut, Pub. Acts 1903, c. 72, p. 49 ; Delaware, Laws 1903, c. 387, p. 748; District of Columbia, 33 St. at L. 555, c. 1809, Acts 58th Cong. April 28,

1904; Georgia, Laws 1903, pp. 92, 457; Idaho, Laws 1903, p. 11, 11 H. B. 18; Indiana, Acts 1903, c. 153, p. 276; Kentucky, Acts 1904, c. 22, p. 72; Louisiana, Acts 1896, p. 137, No. 94; Maryland, Laws 1900, c. 579, p. 907; Massachusetts, Acts and Resolves 1903, c. 415, p. 389; Minnesota, General Laws 1899, c. 291, p. 357; Ohio, Laws 1902, p. 96, H. B. 334; Oklahoma, Sess. Laws 1903, c. 30, p. 249; Oregon, Ballinger & C. Ann. Codes & Stat. c. 7, p. 1479; Tennessee, Acts 1901, c. 133, p. 234; Utah, Laws 1901, c. 67, p. 67; Virginia, Acts approved Jan. 2, 1904, Acts 1902-1904, c. 554, p. 884 (Virginia Code 1904, p. 1217, No. 2460A); Washington, Laws 1901, c. 109, p. 222; Wisconsin, Laws 1901, c. 463, p. 684.' A statute with the same object attained by a similar remedy has been held valid by the highest courts in Massachusetts, Connecticut, Tennessee, and Washington. *John P. Squires & Co. v. Tellier,* 185 Mass. 18, 69 N. E. 312, 102 Am. St. Rep. 322; *Walp v. Mooar,* 76 Conn. 515, 57 Atl. 277; *Neas v. Borches,* 109 Tenn. 398, 71 S. W. 50, 97 Am. St. Rep. 851; *McDaniels v. J. J. Connelly Shoe Co.,* 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889. An act declaring such sales fraudulent was assumed to be valid by the courts of last resort in Wisconsin and Maryland. *Fisher v. Herrman,* 118 Wis. 424, 95 N. W. 392; *Hart v. Roney,* 93 Md. 432, 49 Atl. 661."

A similar statute was upheld by our territorial Supreme. Court in the case of *Williams v. Fourth Nat. Bank of Wichita,* 15 Okla. 477, 82 Pac. 496, 2 L. R. A. (N. S.) 334, 6 Ann. Cas. 970, and the reasons given there are applicable to the case at bar.

We feel that it is unnecessary to pursue the subject further. The foregoing decisions in our opinion amply sustain the constitutionality of the statute in its every phase. The right to pass such an act cannot, in our opinion, be questioned, as certainly it is a proper subject of legislation, and does not contravene in any sense the provisions of, nor is it in any way repugnant to, the due process clause or the equal protection clause of the fourteenth amendment to the federal Constitution. Neither is the act violative of any provision of our state Constitution.

Having disposed of this question, let us now determine whether or not the execution and delivery of a chattel mortgage is a "transfer" of a stock of goods, wares, or merchandise otherwise than in the ordinary course of trade. Section 3 of said act, *supra,* provides: "Transfers under this act shall include sales, exchanges and assignments," etc.

The agreed statement of facts shows that Thomas, the mortgagor, was to remain in possession of the stock and sell the same at retail for cash. The mortgage contained the usual defeasance clause, and gave Thomas, the mortgagor, the right to pay the debt and have the mortgage released at any time. He was in possession when the attachment order was executed. The debt was past due, and no foreclosure had been attempted by the mortgagee. A transfer under this act, to be void, must be either by sale, exchange, or assignment. Is a chattel mortgage, such as was given in this case, either a sale, an exchange, or an assignment? If it is, then it comes clearly within the inhibition of the act, and will be void as to other creditors. If it is not a sale, exchange, or assignment, then it is not within the inhibition of the act, and is valid against attachment creditors. It seems to be admitted by the parties, and correctly, too, that a chattel mortgage is not an exchange, but it is contended earnestly by counsel for plaintiff in error that it is a sale, as well as an assignment.

A transfer as defined by Bouvier's Law Dictionary is:

"The act by which the owner of a thing delivers it to another person with the intent of passing the rights which he has in it to the latter."

Counsel for plaintiff in error, on page 13 of their brief, contend that under this definition a chattel mortgage is a transfer. We cannot agree with the contention, for the mortgagor never surrendered possession under the mortgage, but only agreed to deliver possession upon default or breach of conditions of the mortgage. And the creditor, if so disposed, even after a breach of conditions, could, and in this case did, fail to take possession, and yet the instrument was none the less a chattel mortgage with the possession in the mortgagor, who still had the full right of redemption under the laws of this state.

Bouvier's definition of the word "sale" is as follows:

"An agreement by which one of two contracting parties, called the seller, gives a thing and passes title to it, in exchange for a certain price."

But, under this definition, it is necessary that the title to the thing sold should pass before there would be a sale, and no one surely will contend that under the Oklahoma laws and decisions

the title to property covered by chattel mortgage passes until after default and foreclosure.

In *Litz, Adm'r, v. Exchange Bank,* 15 Okla. 564, 83 Pac. 790, it is said:

"Under the provisions of our statute, a mortgage does not convey title to the property mortgaged, but only creates a lien thereon. Hence a mortgagor has the undoubted right to pay the indebtedness, which thereby extinguishes the lien, at any time before the property is sold by the mortgagee. One of the objects of the statutory notice of ten days, which is required to be given in case the mortgagee attempts to foreclose his mortgage, is to give the mortgagor an opportunity to pay the debt, and thereby extinguish the lien upon the property."

See, also, *Edmisson v. Drumm-Flato Commission Co.,* 13 Okla. 440, 73 Pac. 958.

Neither is a chattel mortgage given under the circumstances such as we find in the case at bar a conditional sale.

"Whether there is a debt between the parties is an important inquiry in determining the nature of the transaction. If there was a previous debt, and this was not extinguished by the sale, but remained as a subsisting obligation, the bill of sale, when connected with the debt by proper evidence, will be regarded as a mortgage. But if the previous debt was extinguished by the sale, and the vendor has the privilege of repurchasing within a given time, the transaction is a conditional sale." (Jones on Chattel Mort. [5th Ed.] sec. 27, and cases cited.)

"If a pre-existing debt was extinguished by a bill of sale, a verbal agreement by the creditor to resell on the debtors fulfilling certain conditions makes the transaction a *conditional sale* and not a *mortgage.* If the previous debt was not discharged by the sale, its continuance raises a strong presumption that the transaction was a mortgage." (Jones on Chattel Mort. [5th Ed.] sec. 27.)

"Sale to be Distinguished From Mortgage.—So sale is to be distinguished from mortgage, which, in most of the states, is a conditional sale of personal property as security for the payment of a debt or the performance of some other obligation. though, in some states, it is regarded, like the mortgage upon land, as a mere lien upon the property rather than a conditional sale." (Mechem on Sales, sec. 36.)

"A sale is a contract for the transfer of property from one person to another for a valuable consideration." (2 Kent, Cor 625.)

"Sale or exchange is a transmutation of property from one man to another in consideration of some price or recompense in value." (2 Bl. Com. 446.)

"A sale is a word of precise legal import, both at law and equity. It means, at all times, a contract between parties to give and to pass rights of property for money, which the buyer pays or promises to pay to the seller for the thing bought and sold." (Per Wayne, J., *Williamson v. Berry*, 8 How. 495, 544 [12 L. Ed. 1170]).

"A sale is the transfer of the absolute title to property for a certain agreed price." (Story.)

"A sale is the transfer by mutual agreement of the absolute title to certain property for a certain price." (Schouler.)

"A sale of chattel is an exchange thereof for money." (Parsons.)

This settles the question conclusively that a chattel mortgage is not a sale, nor a conditional sale, and the ingenious and able argument of counsel in support of the theory must also fail in the light of the laws and adjudicated cases arrayed against it. Then, having thus disposed of the terms "sale" and "exchange," we must determine whether or not the chattel mortgage herein was an assignment. As we understand the matter, the difference between a chattel mortgage and an assignment is that a chattel mortgage is merely a pledge, lien, or security for a sum of money due; while an assignment passes the complete title with the possession to the assignee, without the defeasance clause, and it is a wiping out or full settlement of the debt, while the chattel mortgage does not extinguish the debt.

"An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, the term denoting not only the act of transfer, but also the instrument by which it is effected." (Burrill on Assignments [6th Ed.] sec. 1.)

"Distinguished From Mortgages.—The enactment in many states of statutes prohibiting preferences in general assignments has afforded a ground of attack on partial assignments with preferences sometimes successfully resorted to by nonpreferred creditors, where the claims of other creditors are satisfied by the debtor with mortgages or other conveyances. A mortgage resembles an assignment more closely in the leading feature of being a security or provision for debt and involving a resulting

interest to the grantor on a certain contingency.  An assignment is more than a security for the payment of debts.  It is an absolute appropriation of property for their payment.  It does not create a lien in favor of creditors upon property which in equity is still regarded as the assignor's, but it passes both the legal and the equitable title to the property absolutely beyond the control of the assignor.  There remains, therefore, no equity of redemption in the property, and the trust which results to the assignor in the unemployed balance does not indicate such an equity."  (Burrill on Assignments [6th Ed.] sec. 6.)

Gardiner, J., in the case of *Leitch v. Hollister*, 4 N. Y. 211, speaking of the assignments, observes as follows:

"The conveyance, whatever may be its form, is in effect a mortgage of the property transferred.  A trust as to the surplus results from the nature of the security, and is not the object, or one of the objects, of the assignments.  Whether expressed in the instrument or left to implication is immaterial. The assignee does not acquire the legal and equitable interest in the property conveyed, subject to the trust, but a specific lien upon it."

*Johnson v. Robinson & Co.*, 68 Tex. 399, 4 S. W. 625.

In *Van Patten v. Thompson*, 73 Iowa, 103, 34 N. W. 763, in the syllabus, the court says:

"Chattel mortgages covering substantially all of the mortgagor's property and aggregating all that the property is really worth do not amount, in effect, to an assignment for the benefit of creditors, with preferences, even though they provide that the mortgagees shall take immediate possession and sell the goods, unless the mortgagor regards the transaction as a complete disposition of his property."

In *Manufacturers' & Mechanics' Bank v. Bank of Pennsylvania*, 7 Watts & S. (Pa.) 335, 42 Am. Dec. 240, it was contended that the conveyance was an assignment in trust to pay a particular creditor and not a mortgage.  But the court observed:

"It is clearly a mortgage limited to a trustee in fee with a power to sell, and the statute has regard not to a conditional conveyance which may revest the property in the debtor, but to an absolute assignment to sell and pay at all events."

In *Johnson's Appeal*, 103 Pa. 373, it was held:

"No particular form of words is necessary to constitute an assignment under the statute of June 14, 1836, but the

transaction must be in substance an absolute transfer of the property by the assignor in trust for the benefit of creditors. A mortgage executed by the assignor to a trustee for creditors in consideration of an extension of time for the payment of the assignor's debts, being a mere security, cannot be treated as an assignment for the benefit of creditors under said act."

"A failing debtor conveyed by mortgage all of his property, not exempt by law from execution, to four of his creditors. He owed them about $1,500. The value of the goods conveyed was $1,700. The instrument reserved to the mortgagor any surplus that might remain after paying said indebtedness. *Held,* on its face, the instrument constituted a mortgage, and not a deed of assignment." (*Smith v. Moore,* 2 Ind. T. 126, 48 S. W. 1025.)

"Where an insolvent debtor makes conveyance of the whole of his property by chattel mortgage to one or more of his creditors in good faith, for the security of a *bona fide* indebtedness, although an exclusion of other creditors, the transaction lacks the essential elements of a trust for the benefit of creditors, and cannot be brought within the range of the statutes relating to voluntary assignments." (*Smith-McCord D. G. Co. v. Farwell Co.,* 6 Okla. 318, 50 Pac. 149.)

See, also, *Nix v. Underhill,* 8 Okla. 123, 56 Pac. 959; *Smith v. Baker,* 5 Okla. 326, 49 Pac. 61; *Bessant v. Levy,* 5 Okla. 340, 49 Pac. 1118; *Turner Hdw. Co. v. Reynolds,* 2 Ind. T. 49, 47 S. W. 307.

"Chattel mortgages authorizing the mortgagee to take possession forthwith, and, in addition to the usual power of sale upon default, authorizing the mortgagee to sell at private sale or in the usual course of trade, does not vest any actual title in the mortgagee, and is not inconsistent with the rights of the mortgagors, or their creditors who may acquire liens to redeem at any time. Hence, such mortgage is not void as a general assignment with preferences." (*Cluett v. Rosenthal,* 100 Mich. 193, 58 N. W. 1009, 43 Am. St. Rep. 446.)

"A chattel mortgage upon all of the mortgagor's property intended as a lien only, the mortgagor retaining possession and intending to continue in business, and not to convey the title or right of possession, does not operate as an assignment in favor of the mortgagee as a creditor." (*Noyes v. Ross,* 23 Mont. 425, 59 Pac. 367, 47 L. R. A. 400, 75 Am. St. Rep. 543.)

In the case of *Hannah & Hogg v. Richter Brewing Co. et al.,* 149 Mich. 220, 112 N. W. 713, 12 L. R. A. (N. S.) 178, 119 Am.

St. Rep. 674, 12 Ann. Cas. 344, the court expressly holds that "a chattel mortgage is not within the meaning of a statute forbidding the sale, transfer, or assignment of a stock of goods in bulk without certain preliminary proceedings." In *Wasserman v. Mc-Donnell,* 190 Mass. 326, 76 N. E. 959, it was contended a chattel mortgage of a stock in trade was invalid because of the statute invalidating sales in bulk of stock in trade. The court held, however, that such a statute had no application to the case at bar. The court used the following language in passing on the question:

"We are of opinion, however, that this act has no application to the case at bar. The object of the statute was to protect creditors against fraudulent sales. Here no fraud was shown. The mortgage was on six months' time, and was given for a valuable consideration. It does not appear that when it was given the mortgagor had any creditors except the mortgagee. The mortgage was duly recorded."

In *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53, a trust deed for the benefit of certain creditors was held not to be within the terms and meaning of the Sales in Bulk Act of Washington; the court saying:

"The contention that the transfer was void by reason of its being in contravention of what is termed the Sales in Bulk Law (chapter 109, p. 222, Laws 1901) is untenable, for the reason that this was not a sale within the contemplation of that act. The object of that law was to prevent the vendor, generally a retail merchant, from escaping his responsibilities to his creditors by disposing of all his stock, pocketing the proceeds, and leaving his creditors without redress. But in this case Jennings did not purchase the stock, and, under the terms of the agreement, was not to pay any portion of the value of the stock of which he took possession to the owners. But he simply acted as a trustee, so far as the goods assigned to him went, for the benefit of the creditors."

We fully appreciate the views expressed by the learned counsel when they recite the evil effects which flow from the abuse of the chattel mortgage in cases similar to the one under consideration, but it is not the province of courts to write into statutes words that the Legislature did not insert, or to give a meaning to a law that was not intended to be given by the lawmakers. The

Legislature, with full authority in the premises, prohibited transfers by sale, exchange, and assignment, unless certain conditions have been complied with. The term "mortgage" or "chattel mortgage" was not included in the list. Why, we do not know. Had the Legislature intended to include other methods of transfer, no doubt it would have been done. Certainly a chattel mortgage is not such a transfer as was meant by the Legislature, and therefore does not come within the inhibition of said act, for the terms of the statute are plain and unequivocal.

We conclude, therefore, that the act of May 26, 1908 (Sess. Laws 1907-08, p. 557 [Comp. Laws 1909, p. 1594]), is not in conflict with the organic law, either state or federal, and that a chattel mortgage does not come within the inhibition of said act, and is not void as to the attaching creditors.

The judgment therefore should be affirmed.

By the Court: It is so ordered.