WILLIAM P. MILES, APPELLANT, V. CHEYENNE COUNTY ET AL., APPELLEES.

FILED SEPTEMBER 26, 1914. No. 18,465.

1. **Counties: EMPLOYMENT OF ATTORNEY: CONTINGENT FEE.** A contract between an attorney and a board of county commissioners, by which the attorney for a contingent fee undertakes to collect a dormant judgment of long standing, is not necessarily void solely because of the contingent character of the fee provided for.

2. **Attorney and Client: CONTINGENT FEE: REASONABLENESS.** The evidence is examined, and it is *held* that the contingent fee provided for by the contract is not so unreasonable as to render the contract void as matter of law.

APPEAL from the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Miles & McIntosh, Nolan & Woodland* and *Wilcox & Halligan,* for appellant.

*R. W. Devoe, F. E. Williams, D. L. Johnson* and *A. L. Timblin, contra.*

REESE, C. J.

This action is for an injunction to restrain Cheyenne county, its county board, Alva L. Timblin, and Daniel L. Johnson, from executing and carrying out a contract entered into between the county board and the defendant Timblin on the 18th day of October, 1912. It appears that in the years 1888, 1889, Frank B. Johnson and another, now deceased, were engaged in the banking business at Sidney, in Cheyenne county, and the then county treasurer deposited county funds in said bank to the extent of $17,357.40. The bank failed, and the money thus depos-

ited, with the exception of the sum of $3,000 subsequently paid, was, for the time, lost to the county, but leaving Johnson liable therefor. Later, Mr. Johnson resided in Douglas county, when suit was brought against him in the district court for that county for the balance remaining unpaid. His defense was sustained in the district court, but, upon review in this court, the judgment was reversed, and he was held liable. *McIntosh v. Johnson*, 51 Neb. 33. Upon the cause being remanded to the district court, and on April 14, 1898, judgment was rendered in favor of the plaintiff and against Johnson for the sum of $13,638.89. So far as is shown by the record, no attempt was made to collect the amount of the judgment, probably owing to the supposed insolvent condition of Johnson, and it became dormant. Defendant Timblin is an attorney of the Douglas county bar. In 1910 the county commissioners of Cheyenne county entered into a contract with Timblin, by which he was employed upon an agreement for a contingent fee to collect the judgment. He entered upon the employment, calling defendant Daniel L. Johnson to his assistance. They investigated Frank B. Johnson's affairs, and, after reviving the judgment, instituted a suit, in the nature of a creditors' bill, in the district court for Douglas county, for the purpose of uncovering certain property claimed by them to belong to Johnson, when it was concluded that the contract with the county board was invalid for the reason that it was not entered into upon the petition of ten freeholders of the county. Accordingly such a petition was presented, and on the 18th day of October, 1912, the contract involved in this action was entered into. There is no copy of the first or original contract in the record, but it is plainly inferred that the two contracts were the same in their terms and provisions. The new contract is as follows:

"This agreement, made in duplicate, by and between the county of Cheyenne, in the state of Nebraska, by and through its duly elected, qualified and acting board of county commissioners, of the first part, and Alva L. Timblin, of Omaha, Nebraska, of the second part, witnesseth:

"That, whereas, on the 14th day of April, 1898, the said county of Cheyenne recovered a judgment in the district court for Douglas county, Nebraska, in the action therein pending, wherein James J. McIntosh, as treasurer of said Cheyenne county, was plaintiff and Frank B. Johnson, of Omaha, was defendant, in the sum of $13,638.89, with costs of suit, which action is found in appearance docket 34, at page 295, of the records of Douglas county, and said judgment bearing interest at the rate of 7 per cent. per annum from its date:

"And, whereas, the said judgment is wholly unpaid and the said county of Cheyenne is desirous of collecting the same:

"And, whereas, on the 26th day of November, 1910, said county of Cheyenne, through its board of county commissioners, made and entered into a contract, with said Alva L. Timblin, for the collection thereof, and that said Alva L. Timblin, acting under said contract, has performed a great amount of work toward the collection of said judgment, and has caused said judgment to be revived, and has had proceedings, in the nature of examination of the debtor, and has collected much evidence, pertinent and necessary to the collection of said judgment, and has instituted action in the name of said Cheyenne county, in the district court for Douglas county, against said Frank B. Johnson and others, seeking to subject certain property to the payment of said judgment, which action is now pending and ready to be tried:

"And, whereas, some question has been raised, as to the regularity of such employment, of the said Alva L. Timblin, and the county of Cheyenne is desirous of avoiding any possible question, as to the regularity of such employment.

"It is hereby agreed, by and between the said county of Cheyenne and the said Alva L. Timblin, that the said county does hereby employ said Timblin, to proceed with the collection of said judgment and to maintain, in the name of the county of Cheyenne, any actions or proceed-

ings, which may be now pending, and to institute or bring, in the name of the county of Cheyenne, any actions or proceedings, for the collection of said judgment, which, in his opinion, may be advisable for that purpose, and to do all acts and things, in and about the collection of said judgment, which, under the laws of Nebraska, an attorney at law is empowered to do, but no settlement or compromise shall be made, before submitting the proposition to the board of county commissioners of Cheyenne county, Nebraska, for their approval, and the said county of Cheyenne hereby agrees to and with the said Alva L. Timblin that he shall receive for his services, as herein set forth, the one-half of all sums collected upon said judgment, not exceeding two thousand dollars and one-fourth of all sums, so collected, in excess of two thousand dollars; said sums to be in full compensation for the services of said Timblin and any associate or assistant he may retain, on his part.

"And the said Alva L. Timblin hereby agrees to and with the said county of Cheyenne that he will use his best efforts, toward the collection of said judgment and faithfully perform all the duties and obligations resting upon him, under this agreement and the laws of the state of Nebraska, and to accept the compensation herein agreed upon, in full satisfaction and payment of his services and expenses, if any there be, for himself and any assistant he may retain: And further agrees that he will promptly remit, to the treasurer of Cheyenne county, any money that may come into his hands, from the proceeds of said judgment, less such sums, as may be due, to the said Timblin, as his compensation, as herein set forth.

"In witness whereof, the county of Cheyenne has caused this agreement to be signed by its board of county commissioners, and its county seal attached, and attested by its county clerk, at Sidney, Nebraska, and the said Alva L. Timblin has hereunto set his hand. All done, this 18 day of October, 1913 (1912)."

The objections alleged in the petition to the contract are numerous, and which may be summarized as follows:

(1) That it gives to Timblin authority to institute actions in the name of the county for the collection of the judgment, which, in his opinion, might be advisable. (2) That by the contract he has authority to settle and compromise the said judgment, after submitting the same to the commissioners of the county. (3) That he is authorized to receive payment or compromise of said judgment, and retain for his services 50 per cent. of the first $2,000, and 25 per cent. on all money collected in excess of $2,000, the same to be in full compensation for his services and personal expenses and for any associates or assistants, whom he may retain in the collection of the judgment, thus giving him authority to employ and retain, on behalf of the county, other and different counsel, at his option, without the consent of the county, and that he will remit to the county treasurer the proceeds of said judgment, less his compensation, as provided for in the contract. (4) That, in pursuance of said contract, Timblin has employed defendant Daniel L. Johnson, an attorney at law, for and on behalf of the county, and who is now appearing for the county in prosecuting a certain action now pending in the district court for Douglas county, the said Daniel L. Johnson not having been employed by the county commissioners of Cheyenne county. (5) That Timblin intends to and will employ other counsel without the consent of the commissioners of Cheyenne county, contrary to law, and prosecute said pending action on behalf of the county. (6) That, at the time of the alleged employment of defendant Timblin, there was and still is a duly elected and acting county attorney of Cheyenne county, who is competent, able and willing to conduct any litigation on behalf of the county, necessary and proper in the collection of said judgment, but that the county commissioners, in violation of the statutes, have refused and neglected to consult him in relation to said collection, and have neglected to instruct him to proceed with the case. (7) That in the employment of Timblin the county commissioners have acted entirely independent of the county attorney, and without any consultation with him in rela-

tion thereto. (8) That the contract with Timblin is null
and void, for the reason that it authorizes Timblin to em-
ploy counsel for the county without the consent of the
commissioners, and, unless he is restrained, he will em-
ploy other counsel on behalf of the county in the collec-
tion of said judgment. (9) That the said judgment is a
liquidated claim, and the commissioners have no right to
compromise the same, or take in full payment thereof any
sum less than is due thereon; that it is the intention of
Timblin to compromise and satisfy the judgment for a
much less amount than what is due thereon. (10) That
Cheyenne county is solvent and amply able to pay for
any services by any attorney who is legally and properly
employed; that the contingent contract for fees for the
collection of a liquidated claim is contrary to public pol-
icy and void; that the amount provided for in said con-
tract is upward of $8,000, which is excessive and unrea-
sonable, and therefore void. (11) That under said con-
tract Timblin is authorized to receive all moneys collected,
and, before accounting to the county of Cheyenne therefor,
deduct therefrom his unlawful contingent fees of upwards
of $8,000, and pay the remainder thereof to the county
treasurer, which is void for the reason that the statutes
of this state provide that all claims against the county
must be duly verified and filed with the county commis-
sioners and allowed by them, and paid by warrants upon
the proper fund, with the right of any taxpayer to appeal
therefrom; that under the contract Timblin does not ac-
count to the county commissioners, but retains, out of the
moneys so collected, such amounts as may, to him, seem
due him, paying the remainder to the county treasurer,
thus depriving the taxpayers of the county all opportunity
to appeal from any allowance of such claims; that Timb-
lin is under no bond to the county, is a nonresident, is in-
solvent, and wholly irresponsible financially, and plaintiff
has no remedy at law in the premises. The prayer is for
injunction restraining the county commissioners and
Timblin and Johnson from further proceedings under the
contract.

A general demurrer to the petition was filed, and overruled, when defendants answered, still insisting that the facts stated in the petition are insufficient to constitute a cause of action. The allegations as to the making of the contract are admitted. It is alleged that the contract was entered into with the knowledge, consent and approval of the county attorney; denies that Daniel L. Johnson is employed at the expense of Cheyenne county, but alleges that he is associated with defendant Timblin as an assistant, but wholly without expense to the county, and without authority to appear for the county in any way. The several paragraphs of the petition referring to the provisions of the contract are admitted or denied, but, as the contract must speak for itself, these issues need not be noticed. It is alleged that the judgment against Frank B. Johnson, which Timblin has undertaken to collect, is of many years standing, was dormant when the contract was made, no part had been paid, no execution had been issued, and was of doubtful value; that the judgment debtor claimed to be insolvent; that defendant had caused the judgment to be revived, had issued execution, and in aid of execution had filed a creditors' bill, caused a referee to be appointed, had taken testimony before a referee; that much time had been occupied in investigating the business transactions of the judgment debtor for 20 years; that the action then pending in the district court for Douglas county stands ready for trial, but the trial is delayed by these proceedings; that the judgment debtor is, and for many years has been, a resident of the city of Omaha, which is some 400 miles from Sidney; that he has business interests there, but claims to be insolvent and without property or assets; that the proceedings on the creditors' bill have been instituted for the purpose of ascertaining what, if any, property the debtor may have subject to levy under execution; that such proceedings may be futile; that the distance from Sidney to Omaha is so great as to render it practically impossible for the county attorney of Cheyenne county to make the investigations and conduct the proceedings, and

it was necessary that the matter be in the hands of an attorney residing in Omaha. The reply is a general denial.

The cause was tried to the district court, resulting in a decree in favor of defendants, vacating the injunction, and dismissing the suit. Plaintiff appeals.

The averments of the petition as to the provisions of the contract hardly agree with the contract itself. When we examine the terms of the written agreement, we find scarcely any provision which is inconsistent with the law as to the powers and duties of an attorney under general employment. There is nothing therein which gives to defendant the power to employ other counsel at the expense of the county, but Timblin would have the right, as would an attorney in any case, to call to his aid at his own expense any attorney of his choice to assist him in case he found it necessary. It is not necessary for us to inquire whether the county commissioners would have the power to compromise with the judgment debtor. That question might arise if such compromise were attempted. It is apparent on the face of the contract that Timblin himself is deprived of the right. So far as the powers conferred upon the attorney, as such, by the contract, we are unable to detect anything in violation of the usual powers of an attorney at law in the management of a cause committed to his care.

As we understand the contention of plaintiff, there are but two questions involved in this case. First. Had the county commissioners authority under the statutes to employ an attorney at all on a contingent fee to attempt to collect the judgment against Frank B. Johnson? Second. Is the contract so improvident as to the compensation to be allowed Timblin, in the event of his success in collecting the judgment, or any part thereof, as to render the contract invalid as against public policy or good morals?

As to the first proposition, the power of the county board to employ counsel in civil matters as they may deem necessary appears to be settled by section 9550, Ann. St. 1911. The section provides for the employment of counsel "to prosecute or defend, on behalf of the county or any of its

officers, such civil actions or proceedings as the interests of the county may in their judgment require, and shall receive such reasonable compensation in each case as the board and such counsel may agree upon." It will be observed that, if in the judgment of the board it is necessary to employ counsel, they may do so. This lodges a discretion in them, and the choice of such counsel is not a subject of review by the courts. *Lassen County v. Shinn*, 88 Cal. 510. And the person employed "shall receive such reasonable compensation in each case as the board and such counsel may agree upon." This leaves the question of compensation to the discretion of the parties, with the limitation that it must be reasonable.

The evidence taken upon the trial was largely confined to the one question of the reasonableness of the compensation provided for by the contract. The testimony was very brief and conflicting. However, it is claimed by plaintiff that a contingent fee is never a reasonable one, and that the county commissioners, by force of the statutes, could not legally enter into such a contract. It must be conceded that, applying the rule stated in *Platte County v. Gerrard*, 12 Neb. 244, *Storey v. Murphy*, 9 N. Dak. 115, and *County of Chester v. Barber*, 97 Pa. St. 455, in the matter of the collection of taxes, the rule contended for applies. This may be, and doubtless is, founded upon the provisions of the statutes, which give an easy and effective method for the enforcement of their collection by specific and well-defined rules of procedure, and that, these being followed by the county officers, the burden is thrown upon the owner of the property to show why the tax should not be collected. *State v. Board of Commissioners of Dickinson County*, 77 Kan. 540, 16 L. R. A. n. s. 476. If this is correct, it would not require much reasoning to cause one to arrive at the conclusion that the doctrine of the cases cited might not be conclusively applied to cases like the one before us. A contingent fee is one which is made to depend upon the success or failure in the effort to enforce a supposed right, whether doubtful or not. We know of no settled law in this state which forbids such

contracts in an ordinary lawsuit. We can conceive of no reason why, in such a case, a municipal corporation—a county—may not enter into such a contract, upon condition, of course, that it must be "reasonable."

The evidence being in conflict, we must inquire whether the contract is so unreasonable as to render it void in law. The inquiry must be based upon the particular facts of the case. As we have seen, Johnson was largely indebted to Cheyenne county. A judgment was rendered for the amount of the debt in 1898. He, to all appearances, was insolvent, and, no doubt, for that reason no effort was made to collect the amount due or any part of it. The life of the judgment was not perpetuated by the issuance of execution. It was allowed to become dormant and remain so. It is evident that all prospects or hope of realizing upon it had been abandoned by the county and its officials, and no thought or purpose of making a collection was indulged in by the county officers. True, he seems to have been actively engaged in various lines of business in Omaha, but nothing appears to have come to the surface as property owned by him. The first step in an effort to collect must be an effort to revive the judgment, which must be done on notice to him, which might enable him to shift his assets, if any, and thus prepare for what might follow. The next step would be the institution of a suit in the nature of a creditors' bill for the purpose of bringing to light whatever property might be secreted, all involving much labor, time and expense. Timblin was willing to make the effort. He procured the first contract from the county commissioners, and entered upon it, which required a long line of investigation. If he was a competent lawyer, he realized what was before him if he made the effort. No question of taxation or collection of taxes was involved. The case presented a course of litigation as any other lawsuit of its kind would. Before proceeding with the case, he discovered another claim against the debtor by which he could tie up such assets as might be reached, if he succeeded in his effort to revive, and the successful termination of the creditors' bill. After his litiga-

tion had progressed to the proper stage, he procured the appointment of a referee, and evidence, covering some six months of time, was taken, and the cause was ready for final trial, when this suit was commenced, the injunction issued by the county judge of Cheyenne county, and all the proceedings to collect the judgment thereby suspended until this action could go through with the tedious process of litigation.  In view of the apparent conditions existing at the time the contract was made, and the certainty of litigation that would follow an effort to collect the judgment, we cannot say that the contract was unreasonable.  It is shown that, at the time of and before the commencement of the proceedings, a number of shares of the capital stock, of the value of $10,000, of a solvent corporation, of which Johnson was an officer and manager, was carried upon the books of the corporation in his name, and it is claimed that this stock could have been reached by execution under the provisions of the statutes, and that, for that reason, the contract is unreasonable.  It must be remembered that, at the time the contract was first entered into, this fact was not known by either Timblin or the county board, and was not discovered until by the later proceedings, when the debtor claimed he was not the owner of the stock, but held it in trust.  We are impressed by another fact which appears upon the record.  The fact of the making both of these contracts was open to the public, the latter one, for the purpose of correcting an oversight, upon the petition of 20 freeholders of Cheyenne county, and, after all the time given and labor performed in the effort to collect the judgment, it would seem inequitable to deprive defendant of the apparent results of his labors and destroy what he has done, as well as to deprive the county of any reasonable prospects of ever realizing anything on its judgment. The county attorney appeared for the county commissioners in this case; all insisting upon the validity of the contract.

As we view the case, the judgment of the district court is right. and it is

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.

ROSE, J., not sitting.