# BOURNE v. COLE, ET AL.

(No. 2062; March 22, 1938; 77 Pac. (2d) 617)

For the appellant, there was a brief and an oral argument by *Walter Q. Phelan* of Cheyene.

For the respondent, W. J. Cole, there was a brief and oral argument by *Clyde M. Watts* of Cheyenne.

For the respondents Ray E. Lee and Leslie A. Miller, as Governor, there was a brief by *Ray E. Lee*, Attorney General; *Thos. F. Shea*, Deputy Attorney General, and *Wm. C. Snow*, Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Lee*.

As Amici Curiae, there was a brief by *Wilfred O'Leary* of Cheyenne, Wyoming; *John R. Moran* and *Harold D. Roberts* of Denver, Colorado; and *Harold H. Healy* of Casper, Wyoming and oral argument by *Robert E. More* of Denver, Colorado.

BLUME, Chief Justice.

The legislature in 1937 (c. 66, Session Laws 1937) passed an act providing in substance that the attorney general of the state is authorized to employ, with the consent of the governor, specially qualified assistants and counsel to aid him in any investigation as to whether there is due to the state any money under any lease or other contract, and to aid him in the recovery of any such money; to prosecute suits in that connection and with the approval of the governor settle and compromise any claims. Authority is given to pay to any assistants so employed an amount not to exceed fifty per cent of the money recovered as the result of any compromise or litigation, except such amount of fifty per cent necessary to pay court costs. All money so recovered is directed to be paid into the state treasury, and "there is hereby appropriated out of any moneys so recovered by the State of Wyoming, under the provisions of this act, a sum of money not exceeding one half of the amount recovered, for the purpose of paying court costs and the special assistants herein authorized, which payment shall be by warrant or warrants drawn upon the State Treasury."

On July 12, 1937, the State of Wyoming, acting

through its governor and attorney general, entered into a written contract with W. Jack Cole, pursuant to the statute just mentioned. The contract recites that the State owns certain lands in Salt Creek, Grass Creek, Medicine Bow and Baxter Basin Oil Fields; that the lands are under lease; that the state wants to investigate whether true and accurate accountings have been made to the state under the leases; that it takes an expert to determine that fact, and that Cole is such expert. He accordingly agreed to make such investigation for a contingent fee of twenty-five per cent of any sum which may be recovered on account of any claim which, after such investigation, may be found to exist. He was given full authority to inspect all books, accounts and leases in this connection. He agreed to pay all expenses of the investigation; to make a detailed report of his findings thereunder to the state; to assist in every way in the negotiations for compromise of any claim and in any litigation for the recovery of any amount found to be due through the investigation. It was agreed that the contract should terminate on December 31, 1938, except as to negotiations or litigation then pending. The decision of the governor and attorney general upon any proposed settlement or compromise, or as to the continuance of investigation, was made binding upon Cole.

This action was brought by the plaintiff, on behalf of himself and all other tax payers, to enjoin the performance of the contract, claiming that it is illegal. A demurrer was filed to the petition, which was sustained, and plaintiff refusing to plead further, judgment was entered against him. An appeal has been taken to this court. In addition to the briefs filed on behalf of the parties hereto, we have been favored with a brief of amici curiae.

It may be noted that the case herein is similar to MacDougall v. Board of Land Commissioners, 48 Wyo.

493, 49P. (2d) 663. It appears in that case that the State Board of Land Commissioners sought to have an investigation made similar to that sought to be made under the contract here in question. We held in that case that the contract then involved was illegal, but stated that the holding might have been otherwise, if it had been entered into pursuant to the authorization of the legislature, and if not otherwise in violation of the constitution. It is apparent that Chapter 66 of the Session Laws of 1937 was passed in order to obviate the objections pointed out by the court in that decision.

Under the contract here involved, the money paid to assistants is paid out of the treasury pursuant to legislative appropriation; the control of the investigation to be made and of litigation contemplated is in the attorney general of the state, and its governor. It is apparent that the desire of the state to have such investigation made is of long standing. The contract and the petition herein diclose that it requires an expert to make it, and that defendant Cole is qualified to do so. The legislature evidently believed that, unless an expert would be employed to make the investigation, the amount thought to be due to the state, or the funds managed by it, would never be recovered. While, of course, as was pointed out in the MacDougall case, no contracts should be made which would encourage the Constitutional officers to neglect their duty, we cannot say, under the facts disclosed herein, notwithstanding the assertion to the contrary, that that would be true in this instance. The legislature, in case of necessity, and when the usual and customary means and agencies have been found to be inadequate, must be held to have power, in order that amounts thought to be due to the state may be recovered, to employ special means and agencies for that purpose.

The objection made in the instant case that the func-

tion to be performed by Cole may be performed by certain statutory officers, mentioned in the MacDougall case, is of no avail. These officers were created by the legislature; their functions were prescribed by it. New provisions may be made by it in that regard, if it deems that to be proper. Nor can we say, as is urged, that the compensation to be paid to the expert is excessive. No facts appear in the petition which disclose that to be true. The legislature believed that fifty per cent of the amount recovered might not be excessive. The contract in question provides for compsensation to the extent of twenty five per cent of the amount recovered. It has not been pointed out why we should come to a different conclusion than that arrived at by the legislature and the governor and the attorney general. See in that connection Disbrow v. Board, 119 Iowa 538, 93 N. W. 586; Miles v. Cheyenne County, 96 Nebr. 703, 148 N. W. 959.

.It appears from the petition that under the contract in question here, Cole is expected to investigate as to whether or not there is anything due to the state under leases of school lands, as well as under leases of other lands. It is argued that the contract, and the statute, should be construed as excluding school-land leases, for the reason that if they are not so construed, the statute must be held to be unconstitutional and the contract illegal, in so far as they authorize the payment to Cole of twenty five per cent of the proceeds which may be recovered pursuant to the contemplated investigation. That argument is based on the theory that under Sections 4 and 5 of the Act of Admission, and under the Constitution (Sections 2 and 6 of Article 7 and Section 2 of Article 18) the proceeds or net proceeds from the sale or other permanent disposition of school lands, must go into the permanent school fund and cannot be diverted therefrom; that to pay Cole twenty five per cent of the amount recovered

would diminish the fund to that extent, and that this cannot be lawfully done. The argument is not sound. It is based on the fallacy that the proceeds are in existence, which is not true. It is but hoped that the investigation will bring some to light. If that proves to be true, then the net amount will, of course, be turned into the school fund and will become a part of it. The twenty five per cent paid to Cole will diminish the fund at most theoretically. In actuality, a wholly new fund, to the extent of the remainder, may come into existence. Such a possible fund cannot be treated in the same manner as a fund the existence of which is known. In State ex rel. v. Young, 44 Wyo. 6, 7 P. (2d) 216, 81 A. L. R. 114, we held that the attorney general had power to compromise a doubtful claim for inheritance taxes, notwithstanding the Constitutional provision that no obligation of the state should in any manner be diminished. In the case of the The Governor, et al., v. McEwen, 5 Humphreys 241, 287, it was held that a claim in favor of the school fund such as is involved here, certain as to amount, but uncertain by reason of the insolvency of the person owing, might be compromised—diminished—by a committee provided for by the legislature. The diminution in these cases came about by compromise. The diminution of the amount in the case at bar would come about by reason of the deduction, or payment, of twenty five per cent for services rendered. The principles involved are much the same—the existence of a doubtful claim, and the diminution of the fund. The particular manner of diminution should not make any difference. It is true, of course, that if money should actually be turned in, the amount would then be certain. But we are dealing now with a fund as it actually exists, not as it is hoped it may turn out to be, and hence the rule of the foregoing cases should, we think, be applied here. The state in this case is the trustee for the school funds. It

is held in a number of cases that a fund similar to the school fund here should pay the expenses incident thereto. State v. Davis, 114 Kans. 270, 217 Pac. 905; State v. Rhodes, 4 Nev. 312; United States v. Swope, 16 Fed. (2d) 215; Betts v. Commissioners, 27 Okla. 64, 110 Pac. 766. We need not decide what the rule should be in ordinary cases, but we think it clear that the deduction of expenses under a situation disclosed in the case at bar cannot be held to be illegal.

It is argued on behalf of the amici curiae as follows: "Subdivision second of the contract emphatically provides that the contingent fee compensation to be paid to defendant Cole shall apply not only to sums of money collected but to all 'things of value which may be received, had or recovered' as a result of the settlement or out of litigation. This would mean that if as a result of settlement or out of litigation over enforcement of an oil or gas lease covering school land, the lessee should concede or be required to pay to the school fund an increased rate of royalty to apply to future production, or agree to turn over to the school fund lease equipment or completed wells, defendant Cole would become the owner of his contingent fraction in these items of property in kind." We are not prepared to agree to the correctness of this construction of the contract; if correct, the further question would arise as to whether such agreement would be valid, attempting, as it would, to tie the hands of future officials. But we need not pass upon these points. They are not before the court. The contention here made was not litigated in the court below. The petition in the case does not ask that the contract be declared invalid on the ground contended for, either in whole or in part. If that had been asked, the parties to the contract might have agreed on the true construction thereof, eliminating the objectionable feature, if in fact objectionable, and if that had not been done, the

trial court could at most have held the contract invalid in respect to the matter mentioned, without affecting the validity of the remainder, for the provision under consideration is, we think, severable.

The judgment of the trial court is, accordingly, affirmed.

*Affirmed.*

RINER and KIMBALL, JJ., concur.