Belle GONZALES and Bertie Brown,
Appellants (Defendants below),

v.

PERSONAL COLLECTION SERVICE,
Appellee (Plaintiff below).

No. 4005.

Supreme Court of Wyoming.

Feb. 28, 1972.

Ernest Halle, of Legal Services for Laramie County, Inc., Cheyenne, for appellants.

Benedict D. Trierweiler and James A. Tilker, of Kline, Tilker & Lynch, and Walter C. Urbigkit, Jr., of McClintock, Mai, Urbigkit & Moriarity, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Appellee herein filed complaints against Belle Gonzales and Bertie Brown for accounts due the Memorial Hospital of Laramie County, alleging that these accounts had been assigned to it for collection. Both appellants answered, setting up the defense that appellee was not the real party in interest because such an assignment on a contingent fee basis was constitutionally impermissible. Appellant Gonzales further set up as a defense that she had no means to pay for her hospitalization and that under the statute she was to be furnished these services free.

The parties entered a stipulation affecting both cases and disposal was made of these cases upon an agreed statement of facts. In addition thereto there was testimony by appellant Gonzales as to her income and family responsibility for support of herself and her son. She also testified she had made payments on this account which she stopped when the hospital would not accept such small offered payments.

Upon this agreed statement of facts and the testimony of Belle Gonzales the trial court entered judgment against both appellants for the sums claimed and it is from these judgments this appeal is prosecuted. The cases, involving the same question, were consolidated for this appeal.

Appellants contend that the Memorial Hospital of Laramie County is a municipal corporation and that as such it cannot make an assignment of an account on a contingent fee basis because of the prohibitions of § 40, Art. 3, Wyoming Constitution. They assert that a memorial hospital is a municipal corporation in contemplation

of said section and cite a number of Wyoming cases in support of their contention.

Appellee meets these contentions by the assertion that a memorial hospital is not a municipal corporation as contemplated by the constitutional provision but is a "quasi-municipal corporation" and therefore is not subject to the sections of the cited constitutional provision. Appellee further contends that an assignment of unpaid accounts for collection, because of the nature and effect of such assignments, is not prohibited by this provision.

Although we have examined the cases cited by appellants in support of their contention that a memorial hospital is a municipal corporation in contemplation of the constitutional provision, we are convinced that a determination of that particular question is not necessary or proper for a disposal hereof. A categorization of this character can arise to plague in later cases and in a great many instances reliance upon such categorizations is merely a device to avoid confrontation or analysis. It may also be observed that it is entirely possible that an entity of this type may be a municipal corporation for some purposes and not for others.

Based upon the authorities cited, which they contend establish a memorial hospital to be a municipal corporation, appellants cite as decisive the case of MacDougall v. Board of Land Com'rs of State of Wyoming, 48 Wyo. 493, 49 P.2d 663.

Appellant Gonzales' contention that she had no means to pay and was therefore entitled to receive free treatment from Memorial Hospital will be discussed later in this opinion inasmuch as no such question is raised by appellant Brown.

The assignment under which appellee holds is delightfully simple and unencumbered with detail. Insofar as the operative words are concerned it is as follows:

"——————————— assign the following accounts for collection to Personal Collection Service. Accounts—30% for court and out of town."

This was followed by names, addresses, and amounts of the accounts claimed with the name of the assignor at the bottom.

Appellants assert this assignment is improper becuase of the following constitutional provision:

"No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislature; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury." Section 40, Art. 3, Wyoming Constitution.

They assert in support of this contention as follows:

"1. The purported assignment makes an unlawful appropriation of public funds.

"2. The assignment of subject account for collection on a contingent fee basis is an unlawful delegation of authority granted by law to the Laramie County Memorial Hospital trustees to 'sue and be sued'.

"3. The assignment of an account payable for collection on a contingent fee basis is in effect an unlawful delegation of power to compromise and settle the account because the hospital would be required to discharge the indebtedness in full upon receipt of less than the full amount of the debt from Appellee.

"4. The assignment of an account payable for collection on a contingent fee basis is unconstitutional in that it is a transfer of an obligation owed by a person to a municipal corporation."

In support of these enumerated contentions they rely specifically and solely on the case of MacDougall v. Board of Land Com'rs of State of Wyoming, supra. A rather detailed examination of that case will be required to determine its applicability. The factual circumstances are so much different that the rules laid down therein are of doubtful application in the instant case. It

is almost pedantic to repeat that rules and principles of law in an opinion are based upon and applicable to that factual situation. The MacDougall case, to be fully understood, must be read in connection with the later case of Bourne v. Cole, 53 Wyo. 31, 77 P.2d 617, which also involved a contingent fee arrangement by the State Land Board made after statutory authorization to effect the same result as was contemplated by the contract held void in the MacDougall case.

First and of paramount importance in distinguishing MacDougall from the present matter is the fact that the funds sought to be collected by virtue of the contract were funds payable to the treasury of the State and involved "the permanent school fund, the maintenance of which is guaranteed by the Constitution," 49 P.2d at 669. The court in that opinion also relied upon, and its holding is in part based upon, § 35, Art. 3, Wyoming Constitution, not herein involved or invoked, holding such section was mandatory and applicable in that case. It was upon this factual background the court held that fee arrangement to be "an unlawful appropriation of the funds," 49 P.2d at 666. This removes the MacDougall case as authority for the first stated ground of objection by appellants.

The contract involved in MacDougall gave powers to the party with whom they sought to contract as set out in the opinion, 49 P.2d at 666:

" * * * They are given the absolute power to determine whether the investigation authorized by the contract shall continue, and when or whether it shall end. * * * "

The assignment herein gives appellee no discretion save and except a collection by suit or other peaceable means, and beyond that the record is silent as to any other discretionary power.

Appellants' third specific contention that this assignment unlawfully delegated power to compromise or settle such accounts because the assignor would be required to discharge the full indebtedness upon receipt of a lesser amount is simply not borne out by the record. There is no showing what arrangement appellee had with the hospital. A knowledge of the dangers thereof might well have prompted the hospital to demand full payment and to then remit the fee. That, however, is speculation and appellants make no showing in this area. Appellants' burden is to demonstrate an act in contravention of the constitution and not a possible or feared violation. Burton v. School Dist. No. 19, 47 Wyo. 462, 38 P.2d 610, 612.

We find nothing in MacDougall to in any manner support or clarify appellants' fourth outlined contention that such an assignment as this is a "transfer of an obligation owed by a person to a municipal corporation" nor any cited authorities in the brief or argument that this is correct.

We earlier mentioned the case of Bourne v. Cole as having been related to and of assistance in the application and understanding of the MacDougall case. This relationship was noted by the court when it was said, 77 P.2d at 619:

"It may be noted that the case herein is similar to MacDougall v. Board of Land Commissioners, 48 Wyo. 493, 49 P.2d 663. It appears in that case that the State Board of Land Commissioners sought to have an investigation made similar to that sought to be made under the contract here in question. We held in that case that the contract then involved was illegal, but stated that the holding might have been otherwise, if it had been entered into pursuant to the authorization of the Legislature, and if not otherwise in violation of the Constitution. * * * "

This opinion further notes that if the usual or customary means or agencies have been found inadequate the legislature in that case has the power to employ special means or agencies for that purpose. This is certainly illustrative that there is no constitutional ban forbidding contingent fee arrangement contracts as such if the statute is sufficient. It also suggests to us

that if the hospital does not have sufficient means for collection it may rely upon a contingent fee arrangement without constitutional violation. Legislative authorization for the management and control of a hospital and charging recipients for services appears in §§ 18–318 and 18–320, W. S.1957. The above case distinguishes between proceeds in existence and claims. It was held therein that the 25 percent payable to Cole would diminish the fund at most theoretically and it actually created a new fund and such a possible fund could not be treated in the same manner as a fund in existence. The court said, 77 P.2d at 620:

> " * * * The argument is not sound. It is based on the fallacy that the proceeds are in existence, which is not true. It is but hoped that the investigation will bring some to light. If that proves to be true, then the net amount will, of course, be turned into the school fund and will become a part of it. The 25 per cent paid to Cole will diminish the fund at most theoretically. In actuality, a wholly new fund, to the extent of the remainder, may come into existence. Such a possible fund cannot be treated in the same manner as a fund the existence of which is known. * * * The principles involved are much the same—the existence of a doubtful claim, and the diminution of the fund. The particular manner of diminution should not make any difference. It is true, of course, that if money should actually be turned in, the amount would then be certain. * * *"

That case held the deduction of expenses in that situation was not illegal. An unpaid account for hospitalization cannot be classified as "proceeds in existence."

█ Neither party hereto has cited any direct authority upon the proposition of whether an assignment for collection is a "transfer" as contemplated by the constitutional provision nor have we been able to find any authority directly in point. It must be assumed in disposing of this matter that the purpose sought to be accomplished by Art. 3, § 40, Wyoming Constitution, was to prevent discrimination by the favoring of one class of taxpayer or debtor of a governmental unit as against another and to further prevent waste or dissipation of the assets of such governmental units.

It is therefore necessary to consider the legal effect of an assignment for collection and the relationship created between the assignor and assignee.

This court has heretofore held that "An assignee for the purpose of collection is a trustee of an express trust." James v. Lederer-Strauss & Co., 32 Wyo. 377, 233 P. 137, 139. To the same effect see Doxen v. Wagner, 142 Md. 441, 121 A. 254, 256. It has also been held that a trust creates an obligation arising out of a confidence reposed in one who has the legal title to property conveyed to him that he will faithfully apply and deal with such property according to the confidence reposed. Weltner v. Thurmond, 17 Wyo. 268, 98 P. 590, 595, 99 P. 1128, 129 Am.St.Rep. 1113, affirmed 17 Wyo. 310, 98 P. 601, 99 P. 1128, 129 Am.St.Rep. 1113.

█ By virtue of this assignment and the above authority Memorial Hospital retained equitable title to the proceeds and conveyed only a legal title for the stated purpose of collection under an express trust. Such an assignee has been held to have no claim to the proceeds and to have only a lien for his fee. Hipp v. Spencer, 48 Colo. 433, 109 P. 1109, 1110. There is authority that an assignee acquires no beneficial interest by virtue of such assignment. Doxen v. Wagner, supra; 6 C.J.S. Assignments § 94, p. 1151.

There are numerous definitions of the word "transfer." 3 Bouvier's Law Dictionary, p. 3308 (Rawle's 3d Rev.), defines it as follows:

> "The act by which the owner of a thing delivers it to another person, with the intent of passing the rights which he has in it to the latter."

This definition has been adopted or similarly stated in the following: E. L. Cleve-

land Co. v. Chittenden, 81 Conn. 667, 71 A. 935, 936; O'Hagan v. Kracke, 165 Misc. 4, 300 N.Y.S. 351, 361, affirmed 253 App.Div. 632, 3 N.Y.S.2d 401; Noble v. Ft. Smith Wholesale Grocery Co., 34 Okl. 662, 127 P. 14, 17; Ditto Investment Company v. Ditto, Tex.Civ.App., 302 S.W.2d 692, 694, reversed on other grounds 158 Tex. 104, 309 S.W.2d 219; A.L.I. Restatement of the Law of Property, § 13, p. 33 (1936).

An assignment for collection only does not in our opinion reflect an intention or purpose to pass or convey the rights assignor has in and to the accounts. The effect of the retention of equitable title or beneficial interest certainly negatives such intention.

Memorial hospitals are included within the provisions of the Municipal Budget Act, §§ 9–525—9–540, W.S.1957, and of particular interest is § 9–539(c), W.S.1957, 1971 Cum.Supp., which is as follows:

"County memorial hospitals, district hospitals and county hospitals shall not be deemed to have spent amounts in excess of those budgeted as long as expenditures for operating purposes are within income from all sources."

It would appear from the above that income such as represented by these collections might be spent even in excess of the budgeted or appropriated amounts and is not necessarily subject to budgeting or appropriation.

The principal theme of appellants' argument is that although the trustees of Memorial Hospital had a duty to collect amounts due and owing the hospital this could only be done by the corporation itself through employees or attorneys who would proceed with the collection of such claims. They affirm such duty and then proceed to attack only the method of enforcement.

■ The trustees have the power and duty to manage, operate, and control the hospital, § 18–318, W.S.1957; they have a right to charge and receive a reasonable price for such services, § 18–320, W.S. 1957; and they have the power to sue and be sued under their corporation's name, §

18–318, W.S.1957. A municipal corporation has an implied and inherent power to do those things both necessary and proper to directly effect the purposes for which the corporation is created. Standard Oil Co. v. Town of Patterson, 300 Ill.App. 385, 21 N.E.2d 12, 15; Austin Western Road Machinery Co. v. City of New Madrid, Mo.App., 185 S.W.2d 850, 853; 63 C.J.S. Municipal Corporations §§ 976 and 978, pp. 528 and 529.

■ It is improper for any court to substitute its judgment for that of the board of trustees about the proper method for collecting these claims, which is certainly a part of the management and operation of the hospital and necessary to effect the stated purposes. It is to be presumed that they, as fiduciaries, will properly determine the correct, appropriate, and better way of collecting such accounts. If in their judgment it is advantageous to assign them for collection rather than create a department within the hospital or retain an attorney who would bring suits in the corporate name, it should not be said that this is improper in the absence of any proof of abuse.

It is our opinion that the assignment of the claims of Memorial Hospital of Laramie County to appellee herein was not constitutionally impermissible.

The appellant Gonzales further contends that since she was without means to pay, Memorial Hospital was required to furnish to her without charge the services—the subject of this suit—relying upon § 18–320, W.S.1957, which is as follows:

"Every county memorial hospital established and maintained under the provisions of this article [§§ 18–315, 18–316, 18–318 to 18–321] shall be kept and maintained as a public county hospital. It shall have the right to charge to persons able to pay the same a reasonable price for use of such hospital and its facilities and for being kept and maintained there during such time as required for proper treatment, and shall furnish free to such persons being residents of

the county as have no means to pay for the same all necessary facilities and maintenance during the time that such persons without means may be required to remain there for proper treatment provided that so long as a county board of public welfare shall be functioning in said county under the provisions of chapter 88, Session Laws of Wyoming, 1937, and any amendments thereto, and the full taxes required under section 12 [§ 42–3] of said session laws are levied in said county, the resulting funds in control of said board for hospitalization purposes shall be deemed 'means' for payment of resident indigent hospitalization, previously mentioned in this section."

and that the trial court erred in holding she had such means to pay.

▇▇ As heretofore mentioned, the only evidence in the record affecting this subject is that of the income of the appellant and the fact she was at the time supporting a son. There is no mention made of her property or estate. Appellants apparently equate "means" with "income" or her wages. Appellee's contention is that "means to pay" refers to "resources of any kind." With this contention we are inclined to agree. This claim, arising under the statute above mentioned, involves a construction of the words "as having no means to pay" and "without means." It is readily apparent that the operative word involved in this process is "means." Without belaboring the point, the reason for our view expressed before is stated in rather clear words in People ex rel. Greenwald v.

Greenwald; 64 Misc.2d 346, 314 N.Y.S.2d 859, 861, as follows:

" * * * The term 'means' is not limited to income or earning capacity, so that the respondent's offer in evidence of his Federal Income Tax returns does not necessarily reveal the full extent of his means. Webster's New International Dictionary defines means as 'resources (as of force or wealth) available for disposal: Material resources in such supply as to form the basis for an economically secure and sheltered life (a man of means); broadly: wealth, money.' Funk & Wagnall's Standard College Dictionary defines means as 'money, property, or other resources; wealth: a Man of Means'."

See also Bowsky v. Silverman, 184 La. 977, 168 So. 121, 122; Black's Law Dictionary, p. 1132 (4th Ed.).

▇▇ This is an affirmative defense and seeks to avail appellant of an exception. The burden of proof on an affirmative defense for one who asserts an exception is upon the party asserting the same. First Nat. Bank of Morrill v. Ford, 30 Wyo. 110, 216 P. 691, 692, 31 A.L.R. 1441; Takahashi v. Pepper Tank & Contracting Co., 58 Wyo. 330, 131 P.2d 339, 351.

▇▇ In addition the argument and brief of appellants suggest that had appellant Gonzales been allowed to make payments of five dollars per month, the amount "might now be paid in full." This is having "means to pay" in our view.

The judgments as to both appellants are affirmed.